**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| **COREY LEA, pro se** ) | |
| ) | |
| **Plaintiffs,** ) | |
| **v.** ) | **No. 3:23-cv-00340** |
| ) | **Judge Trauger / Holmes** |
| **THE SECRETARY OF AGRICULTURE,** ) | |
| **THOMAS VILSACK,** ) | |
| **THE UNITED STATES DEPARTMENT OF** ) | |
| **AGRICULTURE,** ) | |
| **DEPT. OF AGRICULTURE** ) | |
| **WINDSOR GROUP, LLC.** ) | |
| **THE MIDTOWN GROUP** ) | |
| **ANALYTIC ACQUISTITONS** ) | |
| **Defendants.** ) | |

**PLAINTIFF COREY LEA'S STATEMENT OF UNDISPUTED**
**MATIERIAL FACTS IS SUPPORT OF MOTION FOR PARTIAL**
**SUMMARY JUDGMENT AGAINST THE FEDERAL DEFENDANTS**
**PURSUANT FRCP 56**

Comes now the Plaintiff pursuant to Rule 56 of the Federal Rules of Civil Procedure, and

files this Statement of Undisputed Facts in support of their Motion for Summary Judgment:

<u>**JURISDICTION AND VENUE**</u>

1. Plaintiff Corey Lea applied for a Direct Loans from Federal Defendants in March of

   2023 in direct loans purchase Land $3,750,000, Equipment $1,250,000, and

   Processing Facility $5,000,000. [SUJ para(s) 28and 37,  ex.2 and 3   ]

   Response:

1

2. Plaintiff Corey Lea identified a farm located in Rutherford County, Tennessee and sought federal assistance in combination of grants and loans under section 1006 of the ARPA and 22006 of the IRA. [SUJ para(s) 37, ex.2 and 3 ]

    Response:

3. On January 28, 2024, Plaintiff Corey Lea applied for a farm ownership and farm operating loan in the Rutherford County, Tennessee FSA Office, $600,000 for the farm ownership loan and $300,000 for the farm operating loan. [SUJ para(s) 42 ex. 4 ]

    Response:

4. Corey Lea is a resident of Rutherford County, Tennessee [SUJ para(s) 4, ex. 1 ]

5. Corey Lea is Black and a member of a protected class as defined by the USDA's definition of "Socially Disadvantaged Farmer." [SUJ para(s) ,5 ex. 5 ]

    Response:

2

6. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this case concerns whether the Department and its officials acted in compliance with the Administrative Procedure Act and other federal laws. [SUJ para(s) 24, ex. 6 ]

   Response:


7. This Court has federal-question jurisdiction under 28 U.S.C. § 1332(a)(1), Plaintiff must be, 1) a citizen of the United States, and, 2) a citizen of a particular state, Plaintiff is a citizen of Tennessee, different from that of which Defendant is a citizen, Defendants Vilsack and the Department of Agriculture is a citizen of Washington DC. [SUJ para(s)  25, ex 1. ]

   Response:


8. This Court has jurisdiction under 28 U.S.C. § 1346 because this case involves a claim against agencies and employees of the federal government. [SUJ para(s)  26 ]

   Response:


9. This Court has jurisdiction under 28 U.S.C. § 1361 because the Court has jurisdiction over any case "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." [SUJ para(s)   27  ]

   Response:


10. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because (1) Plaintiff Tennessee resides in this District; (2) "a substantial part of the events or omissions

3

giving rise to [Tennessee's] claim occurred" in this District. [SUJ para(s) 28, ex. 1-4 ]

Response:

11. This Court has the authority to grant Plaintiffs the relief they request under the Administrative Procedure Act, 5 U.S.C. §§ 705-06; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02; and 28 U.S.C. § 1361. [SUJ para(s) 29. ]

Response:

12. The Pandemic Relief Package under section 22006 of the Inflation Reduction Act for the Plaintiff is a monetary relief effort made in Washington DC by Congress and administered by Defendant Vilsack in Washington. [SUJ para(s) 30 ex.7 ]

Response:

13. The Pandemic Relief Package under section 22006 and 22007 is a payment to be made to the Plaintiff in Tennessee. [SUJ para(s) 30,35 and 36 ex.7 ]

Response:

14. Pursuant to 31 C.F.R. § 285.11 and 31 U.S.C. § 3720D, a federal agency is authorized to collect money from a debtor's disposable pay by means of an administrative wage garnishment to satisfy a delinquent debt owed to the United States. [SUJ para(s)191 and 192 ]

Response:

4

15. Pursuant to 31 C.F.R. § 285.11, a valid judgment was not necessary for the USDA to pursue a collection action against the Petitioner. An administrative wage garnishment requires only a "debt" to the United States, not a judgment. [SUJ para(s) 191-192    ]

        Response:


## CONTINUING OBLIGATIONS AND BUSINESS RELATIONSHIPS

16. In October of 2022, the Federal Defendants automatically wrote down, without permission or knowledge of the Plaintiff, of the farm operating loan belonging to Corey Lea Inc. in the amount of $155,438.56 from the original loan amount of $175,000. [SUJ para(s) 71-89, 121-143, 145-152 ex. 7 and 8 ]

        Response:



17. The Defendant contends that Corey Lea, Plaintiff, is the promissory of a guaranteed loan in which the Plaintiff allegedly owes the Defendants $10,908.00. [SUJ  para(s) 124-125  ex. 4 ]

        Response:



18. The Defendant alleges that Plaintiff Corey Lea is a promissory of a direct loan in the form of a Direct Loan or Farm Operating Loan in the amount of $175,000 and the Plaintiff allegedly owes the Defendants $17,561.44. [SUJ para(s) 124-125 ex. 4  ]

5

Case 3:23-cv-00340    Document 56    Filed 03/13/24    Page 5 of 25 PageID #: 687

Response:

19. Corey Lea Inc. is a dissolved Kentucky Corp and Plaintiff Corey Lea is liable for the debts and any associated taxes with the automatic payment made in October of 2022 by the defendants on the farm operating loan. [SUJ para(s) 131-133 ex. 9 ]

Response:

## MORATORIUM RELIEF UNDER 2008 FOOD ENERGY AND CONSERVATIO ACT CODIFIED AS 7 CFR 766.358

20. Plaintiff Corey Lea has an accepted discrimination complaint with the Office for Civil Rights, 08-1401, that was not fully resolved by the Federal Defendants. [SUJ para(s) 2,14,48,53,96 and 229   ex. 10 ]

Response:

21. The guaranteed loan with the private bank and the direct loan both held by the Department of Agriculture is subject to the moratorium provision of the 2008 Food Energy and Conservation Act. [SUJ para(s) 2,14,48,53,96 and 229 ex.10 ]

Response:

6

22. The language of section 22006 of the Inflation Reduction Act does not supersede specific performance or actual damages under the Administrative Procedures Act. [SUJ para(s)13,15, page 10, section A ]

Response:

## AUTHORITY OF THE ASSISTANT SECRETARY FOR CIVIL RIGHTS AND THE ADMINISTRATIVE LAW JUDGE

23. The ASCR has authority of federal assisted programs pursuant 7 CFR 2.25(a)(1)(i) or 42 U.S.C. 2000d. [SUJ para(s) 45 ]

Response:

24. The guaranteed loan program is a federal assisted program offered by the Department of Agriculture. [SUJ para(s) 45 ]

Response:

25. The ALJ conducts formal hearing on the merits pursuant 7 C.F.R. §§ 15.8(c); 10(f); 10(g); Subpart C- The regulations specifically allow applicants or recipients to request a hearing before OALJ if the applicant or recipient is adversely affected by an Order of the Secretary suspending, terminating, or refusing to continue Federal financial assistance; and he Secretary subsequently denies a request to restore eligibility for the assistance. [SUJ para(s) 34,138, 236   ex.11 ]

Response:

7

26. The ALJ has jurisdiction over the Packers and Stockyards Act pursuant 7 C.F.R. § 1.138 and regularly hears violations of the act for White farmers who have been injured. [SUJ para(s) 186 and 221 ex. 12 and 13 ]

   Response:

## DENIAL OF DUE PROCESS AND EQUAL PROTECTION UNDER THE FIFTH AMENDMENT

27. ALJ and the Office for Civil Rights are required under the APA to conduct adjudications that are subject to due process requirements when two requirements are met: (1) the hearing involves issues of adjudicative facts, or facts that effect a small, individualized group, and (2) the hearing involves the possibility of a deprivation of a property or liberty interest. [SUJ para(s) 97,183,185,186, 236 ex. ]

   Response:

28. The Office for Civil Rights and the Administrative Law Judge must issue a final agency decision within 180 days of receiving the grievance and list the reasons in which it arrived at it's conclusion. [SUJ para(s) 82,120 and 173 ]

   Response:

29. The Office for Civil Rights accepts complaints via regular mail or email program.intake@usda.gov and the Administrative Law Judge accepts complaints in the same fashion, by regular mail or email SM.OHA.HearingClerks@oha.usda.gov. [SUJ para(s) 6,14 and 15 ]

   Response:

8

30. The Office for Civil Rights and the Offices of the Administrative Law Judges are not independent bodies free to make final agency decisions without interference of the Office of General Counsel and the Secretary of Agriculture. [SUJ para(s)140,157,159]

    Response:

31. In Wynn v. Vilsack, the DOJ was quoting Secretary Vilsack and the Office of General Counsel when describing the historical events and methods used to discriminate against Socially Disadvantaged Farmers. [SUJ para(s) 159]

    Response:

32. Creating a debt obligation in the amount of $10,908 on the guaranteed loan is terminating federal assistance and within the jurisdiction of the Administrative Law Judge pursuant 7 C.F.R. §§ 15.8(c); 10(f); 10(g); Subpart C. [SUJ para(s)34, 138 and 236   ex. 4 ]

    Response:

33. Making an automatic payment to the farm operating loan that adversely affects the federal assisted loan without resolving the discrimination complaint to allows for actual damages under the APA is within the jurisdiction of the ALJ pursuant 7 C.F.R. §§ 15.8(c); 10(f); 10(g) [SUJ para(s)  34, 138 and 236    ex. 11 ]

    Response:

9

34. Pursuant to 31 C.F.R. § 285.11 and 31 U.S.C. § 3720D, a federal agency is authorized to collect money from a debtor's disposable pay by means of an administrative wage garnishment to satisfy a delinquent debt owed to the United States. [SUJ para(s)192    ]

    Response:


35. An administrative wage garnishment requires only a "debt" to the United States, not a judgment. Moreover, the use of administrative offset also applies to a "past due, legally enforceable nontax debt [to a federal agency] that is over 180 days delinquent." 31 U.S.C. § 3716(c)(6). [SUJ para(s) 192   ]

    Response:


36. The Plaintiff is required to exhaust his administrative remedies first before filing suit with the ALJ or the Office for Civil Rights within 180 days of the occurrence [SUJ para(s)  82    ]

    Response:


37. The ALJ routinely has jurisdiction over complainants challenging alleged debts subject to federal wage garnishments. [SUJ para(s) 179   ex. 16 ]

    Response:

38. A cause of action and damages remedy can be implied directly under the Constitution when the Due Process Clause of the Fifth Amendment is violated. [SUJ para(s) 60 and 225 ]

Response:

39. Denying docketing of complaints is a denial of due process and equal protection if the complainant is a member of a protected class. [SUJ para(s) 74   ]

Response:

## 42 U.S.C §1981

### Discrimination in the Making of a Contract

40. Defendants created a federal pandemic relief contract to Plaintiff pursuant section 22006 of the Inflation Reduction Act of 2022 and distributed the monetary relief in the form of an automatic payment to achieve a discriminatory objective. [SUJ  para(s) 30, ex 7]

Response:

41. Defendants distributed funding to similarly situated White farmers and ranchers in the form of direct payments so that the White farmers could go pay creditors, including the Defendants to avoid 'writing down the debts so that White farmers would continue to be eligible for future federal assistance and pursuant to agency rules 7 CFR 764.101(d)(2). [SUJ para(s)1-12,  ex. 17 ]

Response:

11

42. Defendants unlawfully closed pending discrimination complaints subject to moratorium provision of the 2008 Food Energy and Conservation Act or later codified as 7 CFR 766.358 in furtherance of a conspiracy to create loan obligations by applying automatic payments from section 22006 of the Inflation Reduction Act so that the Defendants could deny the request for farm ownership loans, farm operating loans in March of 2023 and January of 2024 and grants available and applied for meat expansion from the ARPA and IRA. [SUJ para(s)30,31,35,131,146,168,222 and 232   ex 5 and 7   ]

Response:

## Discrimination in the Performance and Enforcement of Guaranteed Loan and Direct Loan

43. MAKE AND ENFORCE CONTRACTS" DEFINED For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. [SUJ para(s) 90-99, 114 and 148,   ex.2,4,  5 and 7   ]

Response:

44. Defendant Vilsack had the authority to cure the claims of the private bank who is the party to the loan guarantee under section 42 USC 1480 and the inaction to cure the claims led to a debt obligation created on October 18, 2022 to the Plaintiff. [SUJ para(s) 48 and 231 ex. 18-19 ]

Response:

12

45. Defendant Vilsack paid the attorney of the private bank nearly $150,000 in legal fees even though legal fees are not allowed by agency rules and regulation governing the guaranteed loan. The discriminatory inaction was to dispose of the money belonging to the United States so that Defendant Vilsack could deny future federal assistance to the Plaintiff. [SUJ para(s)196 and 229   ex. 20 and 21 ]

    Response:


46. Defendant Vilsack instructed the ASCR and the Office for Civil Rights to deny jurisdiction over the guaranteed loan in June of 2014 that would have stopped the private attorney from taking the money that was to be paid on the farm operating loan or direct loan to achieve his discriminatory objective because the Plaintiff is Black. [SUJ para(s) 44  ex.  22 ]

    Response:


47. The Federal Defendants concealed the fact that the private bank did not have permission to foreclose until the private bank gained a judgment in the Warren County, Kentucky Court. A violation of the rules that govern the loan guarantee. [SUJ para(s)   ex.  23,24 and 25 ]

    Response:


48. In furtherance of the conspiracy to discriminate against the enforcement of the guaranteed loan, the private bank did not serve the Federal Defendants who is no less a debtor on the farm ownership loan with held by the private bank. [SUJ para(s) 148,177,187 and 235    ]

13

Response:

49. Congress modified the terms of the guaranteed loan by creating a moratorium against foreclosure and accelerating of accounts until the accepted discrimination complaints were resolved by the agency pursuant to the 2008 Food Energy and Conservation Act. [SUJ para(s) 2,14,48,52,53,74,96, 197 ,229 232 ex. 26].

    Response:

50. Defendants Vilsack and the Department of Agriculture retaliated on the Plaintiff base on his race and denied due process with the ALJ and Office for Civil Rights by outright refusing to docket complaints or falsely concealing evidence to implicate the private bank and its agents that caused a consequence in Tennessee. [SUJ para(s) ex. 10 and 27]

    Response:

51. Defendant Vilsack and the Department of Agriculture retaliated against the Plaintiff based on his raced by conspiring with lobbyist that requested that Defendant Vilsack not provide pandemic relief to Black farmers who had past legal challenges with the guaranteed lenders. [SUJ para(s) 92,115,122,128,193and 207 ex. 28 ]

    Response:

52. Defendant Vilsack retaliated against the Plaintiff on a discriminatory basis to automatically apply pandemic relief to loans under moratorium to close them out

14

without resolving then pending complaints that were subject to actual damages under specific acts of discrimination. [SUJ para(s)16,143,202 and 204   ex. 7 and 8   ]

Response:

53. Defendant Vilsack and the Department of Agriculture retaliated against the Plaintiff by denying farm operating loans and farm ownership loans in Tennessee due to the automatic payment and then stating the denial was based on the debt write down was the main reason. [SUJ para(s) 64,96 and 108   ex. 4 ]

Response:

## 42 U.S.C. § 1982

54. Defendants Vilsack violated the rights of the Plaintiff to hold and to purchase property by creating a scheme to automatically apply debt relief to loans of the Plaintiff so that the Plaintiff could not get future federal assistance based on race and contrary to the way pandemic relief was distributed to White farmers. [SUJ para(s)30 ex.  2,4 and 7]

Response:

55. Defendants Vilsack conspired with the private bank, its agents and lobbyist to deprive the Plaintiff of right to hold and purchase property by failing to enforce the loan guarantee that created an obligation of debt to the Defendant on October 18, 2022. [SUJ para(s)86, 161,191,196 and 233   ex. 23, 27 and 28  ]

15

Response:

56. Defenant Vilsack violated the rights of the Plaintiff by not sending the total pandemic afforded to the Plaintiff in the amount of $386,098.87 by direct deposit in a reasonable time, a method and reasonable distribution time enjoyed by similarly situated White farmers. [SUJ para(s) 8,40,57, 83 and 107 ex. 1 and 7 ]

   Response:

57. Defendant Vilsack used the term "automatic payment" instead of loan modification to payoff alleged debts to write down alleged debts $228,083.86 from section 22006 of the Inflation Reduction Act. [SUJ para(s) 108 ex. 7 ]

   Response:

58. Congress mandated Defendant Vilsack to provide payments to Socially Disadvantaged Farmers and Ranchers and not to make payments for-"In addition to amounts otherwise available, there is appropriated to the Secretary for fiscal year 2022, out of amounts in the Treasury not otherwise appropriated, $3,100,000,000, to remain available until September 30, 2031, to provide payments to, for the cost of loans or loan modifications for, or to carry out section 331(b)(4) of the Consolidated Farm and Rural Development Act (7 U.S.C. 1981(b)(4)) with respect to distressed borrowers of direct or guaranteed loans administered by the Farm Service Agency under subtitle A, B, or C of that Act (7 U.S.C. 1922 through 1970). In carrying out this section, the Secretary shall provide relief to those borrowers whose agricultural

16

operations are at financial risk as expeditiously as possible, as determined by the
Secretary." [SUJ para(s) page 10 header, ex.7  ]

Response:

## 42 U.S.C. § 1985

59. Defendant Vilsack conspired with a private bank headquartered in Nashville,
Tennessee and who held a mortgage on a guaranteed loan by not enforcing the terms
of the guaranteed loan in exchange for not serving the Federal Defendants or making
claims against the Federal Defendants. [SUJ para(s)  ex. 6,11,22 and 23, 27  ]

Response:

60. Defendants Vilsack or the Department of Agriculture has never sought a judgment against the
private bank or its agent to further the conspiracy to create an obligation to be executed against
the Plaintiff after the statute of limitation have run on the guaranteed loan to render the contract
unenforceable. [SUJ para(s)161,191,196 and 233   ]

Response:

61. Defendant Vilsack and the Department of Agriculture conspired with lobbyist for the private
bank to deny pandemic relief in the form of money paid directly to Black farmers such as the
Plaintiff so that the Black farmers would not have the resources to bring legal challenges against
the private banks. [SUJ para(s) 161,191,196 and 233     ex. 28 ]

Response:

17

62. In furtherance of the conspiracy, Defendants Vilsack and private banks and their agents created a scheme that would allow the Federal Defendants to close pending civil rights claims of Black farmers, collect the interest from the loans, leave a deficit on the loans subject to moratorium relief and tax obligation from the automatic payment to further discriminate against Black farmers such as the Plaintiff. [SUJ para(s) 161,191,196 and 233    ex. 7 ]

   Response:


## NEGLIGENCE

63. Defendants' deprivation of due process and equal protection in loan servicing provided to similarly situated White farmers from pandemic relief caused injury to the Plaintiff. [SUJ para(s)2,85,161 and 193   ex. 7 ]

   Response:


64. The Federal Defendants now states that Socially Disadvantaged Farmers are available for new loan to re-enter farming but denied the Plaintiff based on the current rules and regulations after 3 years of the passage of section 1006 of the ARPA and the Inflation Reduction Act, section 22006. [Para 68]

   Response:


65. The Federal Defendants purposely did not include appeals rights or post the guidelines for sections 22007 of the Inflation Reduction Act in the federal register as required by law in furtherance of the conspiracy to deprive Black farmers such as the

Plaintiff due process and equal protection afforded to similarly situated White farmers. [SUJ para(s) 87,88, 117 and 204    ]

Response:

## **PROMISSORY FRAUD**

66. Defendants Vilsack and the Department of Agriculture made the statement that Black farmers who were subject to past discrimination would be eligible for new loan to re-enter farming a statement that was known to be false. [SUJ para(s) 68  ex. 29  ]

Response:

67. Defendants Vilsack and the Department of Agriculture created a scheme to deprive Black farmers of the resources to pay any alleged obligations, distributed an automatic payment so that the Black farmer would have to pay the agency for any debt relief received under section 22006 of the Inflation Reduction Act, denied due process to contest the debt and in retaliation, burdened the Black farmers down with potential tax debt for the automatic payments so that the IRS could offset wages or foreclose on properties  so statements were made with fraudulent intent. [SUJ para(s)16,56,187.193 and 235   ex.  7,23 and 27 ]

Response:

68. The Plaintiff relied on the fact and suffered damages from the fraudulent misrepresentation of section 22006 of the Inflation Reduction Act and section 1006 of

19

the American Rescue Plan Act to get federal assistance and was denied on more than

one occasion to get access to grants, farm operating and farm ownership loans after

January 1, 2021. [SUJ para(s) 37 and 123 ex. 2,3 and 4 ]

      Response:

69. Defendants Vilsack and the Department of Agriculture admitted in Wynn v. Vilsack

that the Federal Defendants have historically deprived Black farmers from the same

privileges to White farmers in loan servicing, resolving complaints, access to credit

for farm ownership and farm operating loans and the promise of the new loans is a

reflection of their past actions to deny Black farmers of access to credit without the

present intent to make the credit available today. [SUJ para(s)159   ]

      Response:

70. Defendants Vilsack and the Department of Agriculture wrote rules and regulations

that makes Socially Disadvantaged Farmers ineligible for resources for direct land

access for past discriminatory acts pursuant section 22006 of the Inflation Reduction

Act. [SUJ para(s) 168  ]

      Response:

## THE ADMINISTRATIVE PROCEDURES ACT 706(1)(2)

71. Defendants Vilsack and the Department of Agriculture have a pattern and practice

continued violations of denying due process so that Black farmers such as the

Plaintiff cannot exhaust their administrative remedies or contest alleged debts in

furtherance of a conspiracy and retaliation to deprive Black farmers new access to

credit and actual damages for specific acts of discrimination. [SUJ para(s) 136,147,170,

180,184, 187, 201  ex.   ]

       Response:


72. Plaintiff has suffered injuries for past action and at risk of offsets or liens on property

owned by Plaintiff due to the denial of final agency decisions and the opportunity to

present evidence to rebut adverse action already taken by Defendants Vilsack and the

Department of Agriculture. [SUJ para(s)   ex. 11,14,23 and 27  ]

       Response:


## **BREACH OF CONTRACT**

73. Plaintiff Corey Lea is the real party of interest and third party beneficiary and is liable

for debts for dissolved Corey Lea Inc. [SUJ para(s)180, 185, 198,223,226,229236  ex.1   ]

       Response:


74. Defendant Tom Vilsack breached the farm ownership loan (loan guarantee) and farm

operating loan (direct loan) by failing to resolve the discrimination complaints, in

which Congress modified the contract by legislating moratorium provisions to both

contracts, then paying off the majority of the direct loan with  pandemic relief that

paid the Federal Defendants over $50,000 in interest. [SUJ para(s)

30,43,125,137,138,146,192 and 221  ex.  7 ]

21

Response:

75. Defendants Vilsack and the Department of Agriculture breached the covenant of good faith and fair dealing that comes with every government contract by creating debt obligation for the Plaintiff without the opportunity to contest the debt administratively. [SUJ para(s) 169 ex. 11, 14,23 and 27   ]

Response:

76. Defendants Vilsack and the Department of Agriculture breach the guaranteed loan contract and direct loan by paying themselves $50,000 in interest without resolving the discrimination complaints that created mandates for the Federal Defendants under moratorium relief afforded to the Plaintiff pursuant the 2008 Food Energy and Conservation Act. [SUJ para(s) 30,43,125,137,138,146,192 and 221   ex. 7   ]

Response:

**PATTERN AND PRACTIC OF CONTINUED VIOLATIONS OF FRAUDULENT MISREPRESENTATION IN FURTHERANCE OF CONSPIRACY OF DENIAL DUE PROCESS AND EQUAL PROTECTION UNDER THE FIFTH AMENDMENT**

77. Feb. 4, 2009- The Office for Civil Rights accepted the discrimination complaint filed by Corey Lea, The 2008 Farm Bill provided a moratorium on program loan such as the loan guarantee in this case, pursuant to 7 C.F.R. 766.358.  [para(s) 229-236, ex, 10]

Response:

22

78. March 9, 2009, Kentucky Farm Loan Chief Mitch Whittle sends an email to Warren County, Kentucky loan manager, Bryan Denison, stating that he is not authorized proceed with foreclosure of the account. para(s) 229-236, Ex. 26

        Response:

79. The Assistant Secretary for Civil Rights failed to enforce the federally assisted program under 7 CFR 2.25, 42 USC 2000d or refer the financial crime to the DOJ per department policy, para(s) 229-236, -see ex.30- 3, pg. 2-3.

        Response:

80. Secretary Vilsack had direct knowledge on the unlawful foreclosure of the farm belonging to Corey Lea and failed to cure the claim of the guaranteed lender through his powers pursuant 42 U.S.C. 1480, para(s) 229-236, see ex.30-11

        Response:

81. On September 9, 2009, Plaintiff received one of many letters from the USDA to accelerate his loans during moratorium, para(s) 229-236, see ex.30- 7.

        Response:

82. Although the discrimination complaint barred administrative offsets, it was acknowledged by the agency on October 6, 2009, para(s) 229-236, see ex. 30-9.

        Response:

23

83. On November 17, 2009, the FSA made treasury offsets and took payments due to Plaintiff-Appellant, para(s) 22-236, see ex. 30-8.

  Response:

84. On March 3, 2010, Appellees First Bank and Hinton conspired with FSA employees Denison and Hinton to approve a liquidation plan on January 22, 2010, para(s) 229-236, see ex. 30- 4, page 2.

  Response:

85. On October 18, 2022 Defendant Vilsack did not send a direct payment to Plaintiff in violation of section 22006 of the Inflation Reduction Act to make payment on alleged debt, but instead made an automatic payment so that it would be labeled as debt write down to deny future federal assistance. para(s) 229-236, ex. 7 ]

  Response:

86. The Plaintiff was denied an opportunity to appear before the ALJ to contest debts on three different occasions to contest alleged debt that could have prevented injuries to Plaintiff. [ para(s) 229-236, ex. 11,14,15 and 23 ]

  Response:

87. The Plaintiff was denied the opportunity to file a discrimination complaint to the Office for Civil Rights based on fraudulent misrepresentation of lack jurisdiction on

24

two occasions that could have prevented injuries to Plaintiff. [SUJ para(s) para(s) 229-236,    ex. 22 and 27   ]

       Response:


_____
Corey Lea

_____
Notary Public

3-13-24
_____
Date and Seal

COMMISSION EXPIRES:

02-24-2026

25