# Exhibit

Ex 3

# LOT/LAND PURCHASE AND SALE AGREEMENT

1. **Purchase and Sale.** For and in consideration of the mutual covenants herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned buyer Corey Lea ("Buyer") agrees to buy and the undersigned seller Brown Darrell R Irrevocable Family Trust Attn: Trustee's ("Seller") agrees to sell all that tract or parcel of land, with such improvements as are located thereon, described as follows: All that tract of land known as: 3557 Snail Shell Cave Rd (Address) Rockvale (City), Tennessee, 37153 (Zip), as recorded in Rutherford County, TN County Register of Deeds Office, 1183 deed book(s), 3043 page(s), and/or _____ instrument number and as further described as: 122  003.01

together with all fixtures, landscaping, improvements, and appurtenances, all being hereinafter collectively referred to as the "Property."

☐ **This box must be checked to be part of this Agreement.** The full and legal description of said Property is as described in the attached "Legal Description Exhibit."

   A. **LEASED ITEMS.** Leased items that remain with the Property (e.g. billboards, irrigation systems, fuel tank, etc.) _____. Buyer shall assume any and all lease payments as of Closing. If leases are not assumable, the balance shall be paid in full by Seller at or before Closing.

   ☑ Buyer does not wish to assume a leased item. **(THIS BOX MUST BE CHECKED IN ORDER FOR IT TO BE A PART OF THIS AGREEMENT.)**

   Buyer does not wish to assume Seller's current lease of _____; therefore, Seller shall have said lease cancelled and leased items removed from Property prior to Closing.

   B. **FUEL.** Fuel, if any, shall be adjusted and charged to Buyer and credited to Seller at Closing at current market prices.

2. **Purchase Price, Method of Payment and Closing Expenses.** Buyer warrants that, except as may be otherwise provided herein, Buyer shall at Closing have sufficient cash to complete the purchase of the Property under the terms of this Lot/Land Purchase and Sale Agreement (hereinafter "Purchase and Sale Agreement" or "Agreement"). The purchase price to be paid is: $ 3,750,000 , three million seven hundred fifty thousand U.S. Dollars, ("Purchase Price") which shall be disbursed to Seller or Seller's Closing Agency by one of the following methods:
   i. a Federal Reserve Bank wire transfer;
   ii. a Cashier's Check issued by a financial institution as defined in 12 CFR § 229.2(i); OR
   iii. other such form as is approved in writing by Seller.

This price is based (**Select one. The sections not checked are not a part of this Agreement.**):

   ☑ for entire Property as a tract, and not by the acre **OR**

   ☐ per acre with the Purchase Price to be determined by the actual amount of acreage of the Property, $_____ per acre based on a current or mutually acceptable survey **OR**

   ☐ for entire Property as a tract but with the Purchase Price to be adjusted upward or downward at $_____ per acre in the event the actual amount of acreage of the Property based on a current or mutually acceptable survey should vary more or less than _____ acre(s) from the _____ estimated acreage.

   A. **Appraisal (Select either 1 or 2 below. The sections not checked are not a part of this Agreement).**
      ☐ 1. This Agreement **IS NOT** contingent upon the appraised value either equaling or exceeding the agreed upon Purchase Price.
      ☑ 2. This Agreement **IS CONTINGENT** upon the appraised value either equaling or exceeding the agreed upon Purchase Price If appraised value is equal to or exceeds the Purchase Price, this contingency is satisfied. In consideration of Buyer having conducted an appraisal, the sufficiency of such consideration being hereby

This form is copyrighted and may only be used in real estate transactions in which Jessica Haynes is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.


TENNESSEE REALTORS    Copyright 2015 © Tennessee Association of Realtors®    Version 01/01/2023
RF404 – Lot/Land Purchase and Sale Agreement, Page 1 of 10



acknowledged, if the appraised value of the Property does not equal or exceed the Purchase Price, Buyer shall promptly notify the Seller via the Notification Form or equivalent written notice. Buyer shall then have 3 days to either:
1. waive the appraisal contingency via the Notification Form or equivalent written notice **OR**
2. terminate the Agreement by giving notice to Seller via the Notification Form or equivalent written notice. Upon timely termination, Buyer is entitled to a refund of the Earnest Money/Trust Money.

In the event Buyer fails to either waive the appraisal contingency or terminate the Agreement as set forth above, this contingency is deemed satisfied. Thereafter, failure to appraise shall not be used as the basis for loan denial or termination of Agreement. Seller shall have the right to request any supporting documentation showing appraised value did not equal or exceed the agreed upon Purchase Price.

B. **Closing Expenses.**
1. **Seller Expenses.** Seller shall pay all existing loans affecting the Property, including all penalties, release preparation costs, and applicable recording costs; any accrued and/or outstanding association dues or fees; fee (if any) to obtain lien payoff/estoppel letters/statement of accounts from any and all associations, property management companies, mortgage holders or other liens affecting the Property; Seller's Closing fee, document preparation fee and/or attorney's fees; fee for preparation of deed; notary fee on deed; and financial institution (Bank, Credit Union, etc.) wire transfer fee or commercial courier service fee related to the disbursement of any lien payoff(s). Seller additionally agrees to permit any withholdings and/or to pay any additional sum due as is required under the Foreign Investment in Real Property Tax Act. Failure to do so shall constitute a default by Seller.

**In the event Seller is subject to Tax Withholding as required by the Foreign Investment in Real Property Tax Act, (hereinafter "FIRPTA"), Seller additionally agrees that such Tax Withholding must be collected from Seller by Buyer's Closing Agent at the time of Closing.** In the event Seller is not subject to FIRPTA, Seller shall be required as a condition of Closing to sign appropriate affidavits certifying that Seller is not subject to FIRPTA. *It is Seller's responsibility to seek independent tax advice or counsel prior to the Closing Date regarding such tax matters.*

2. **Buyer Expenses.** Buyer shall pay all transfer taxes and recording fees on deed of conveyance and deed of trust; Buyer's Closing fee, document preparation fee and/or attorney's fees; preparation of note, deed of trust, and other loan documents; mortgage loan inspection or boundary line survey; credit report; required premiums for private mortgage, hazard and flood insurance; required reserved deposits for insurance premiums and taxes; prepaid interest; re-inspection fees pursuant to appraisal; and any costs incident to obtaining and closing a loan, including but not limited to: appraisal, origination, discount points, application, commitment, underwriting, document review, courier, assignment, photo, tax service notary fees, and any wire fee or other charge imposed for the disbursement of the Seller's proceeds according to the terms of this Agreement.

3. **Title Expenses.** Cost of title search, mortgagee's policy and owner's policy (rates to be as filed with the Tennessee Department of Commerce and Insurance) shall be paid as follows:

buyer
Simultaneous issue rates shall apply.

**Not all of the above items (Seller Expenses, Buyer Expenses and Title Expenses) are applicable to every Transaction and may be modified as follows:**

n/a

**Closing Agency for Buyer & Contact Information:** Trinity Title, 401 W Main St Ste 200 Murfreesboro, TN 37130
Aimee Cain 615-440-7159
**Closing Agency for Seller & Contact Information:**

C. **Financial Contingency – Loan(s) To Be Obtained:** This Agreement is conditioned upon Buyer's ability to obtain a loan(s) in the principal amount up to 100 % of the Purchase Price listed above to be secured by a deed of trust on the Property. "Ability to obtain" as used herein means that Buyer is qualified to receive the loan described herein based upon Lender's customary and standard underwriting criteria. In consideration of Buyer, having acted in good faith and in accordance with the terms below, being unable to obtain financing by the Closing Date, the sufficiency of such consideration being hereby acknowledged, Buyer may terminate this Agreement by providing

This form is copyrighted and may only be used in real estate transactions in which Jessica Haynes is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.

TENNESSEE REALTORS
Copyright 2015 © Tennessee Association of Realtors®
RF404 – Lot/Land Purchase and Sale Agreement, Page 2 of 10
Version 01/01/2023



written notice via the Notification form or equivalent written notice. Seller shall have the right to request any supporting documentation regarding loan denial. Upon termination, Buyer is entitled to a refund of the Earnest Money/Trust Money. Lender is defined herein as the financial institution funding the loan.

The loan shall be of the type selected below (**Select the appropriate boxes. Unselected items shall not be part of this Agreement**):

☐ Conventional Loan ☑ Rural Development/USDA

☐ Other _____

Buyer may apply for a loan with different terms and conditions and also Close the transaction provided all other terms and conditions of this Agreement are fulfilled and the new loan does not increase any costs charged to Seller. Buyer shall be obligated to Close this transaction if Buyer has the ability to obtain a loan with terms as described herein and/or any other loan for which Buyer has applied and been approved.

**Loan Obligations**: *The Buyer agrees and/or certifies as follows:*
(1) Within three (3) days after the Binding Agreement Date, Buyer shall make application for the loan and shall pay for credit report. Buyer shall immediately notify Seller or Seller's representative of having applied for the loan and provide Lender's name and contact information, and that Buyer has instructed Lender to order credit report. Such certifications shall be made via the Notification form or equivalent written notice;
(2) Within fourteen (14) days after the Binding Agreement Date, Buyer shall warrant and represent to Seller via the Notification form or equivalent written notice that:
   a. Buyer has notified Lender of an Intent to Proceed and has available funds to Close per the signed Loan Estimate; and
   b. Buyer has requested that the appraisal be ordered and affirms that the appraisal fee has been paid.
(3) Buyer shall pursue qualification for and approval of the loan diligently and in good faith;
(4) Buyer shall continually and immediately provide requested documentation to Lender and/or loan originator;
(5) Unless otherwise stated in this Agreement, Buyer represents that this loan is not contingent upon the lease or sale of any other real property and the same shall not be used as the basis for loan denial; and
(6) Buyer shall not intentionally make any material changes in Buyer's financial condition which would adversely affect Buyer's ability to obtain the Primary Loan or any other loan referenced herein.

Should Buyer fail to timely comply with 2.C.(1) and/or 2.C.(2) above and provide notice as required, Seller may make written demand for compliance via the Notification form or equivalent written notice. If Buyer does not furnish Seller the requested documentation within two (2) days after such demand for compliance, Buyer shall be considered in default and Seller's obligation to sell is terminated.

**THIS BOX MUST BE CHECKED IN ORDER FOR IT TO BE A PART OF THIS AGREEMENT.**
☐ **Financing Contingency Waived** (e.g. "All Cash", etc.):
Buyer's obligation to Close shall not be subject to any financial contingency. Buyer reserves the right to obtain a loan. Buyer shall furnish proof of available funds to close in the following manner: _____ (e.g. bank statement, Lender's commitment letter) within five (5) days after Binding Agreement Date. Should Buyer fail to do so, Seller may make written demand for compliance via the Notification form or equivalent written notice. If Buyer does not furnish Seller with the requested notice within two (2) days after such demand for compliance, Buyer shall be considered in default and Seller's obligation to sell is terminated. Failure to Close due to lack of funds shall be considered default by Buyer.

In the event that this Agreement is contingent upon an appraisal, Buyer must order the appraisal and provide Seller with the name and telephone number of the appraisal company and proof that appraisal was ordered within five (5) days of the Binding Agreement Date. Should Buyer fail to do so, Seller may make written demand for compliance via the Notification form or equivalent written notice. If Buyer does not furnish Seller with the requested notice within two (2) days after such demand for compliance, Buyer shall be considered in default and Seller's obligation is terminated.

3. **Earnest Money/Trust Money**. Buyer has paid or shall pay within 5____ days after the Binding Agreement Date to Trinity Title_____ (name of Holder) ("Holder")
located at _____ (address of Holder), an

This form is copyrighted and may only be used in real estate transactions in which Jessica Haynes_____ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.

**TENNESSEE REALTORS**
**Copyright 2015 © Tennessee Association of Realtors®**
**RF404 – Lot/Land Purchase and Sale Agreement, Page 3 of 10**

Version 01/01/2023



| | | |
|---|---|---|
|148| |Earnest Money/Trust Money deposit of $0_____ by check (OR|
|149| |_____) ("Earnest Money/Trust Money").|

150  A. **Failure to Receive Earnest Money/Trust Money.** In the event Earnest Money/Trust Money (if applicable) is not
151     timely received by Holder or Earnest Money/Trust Money check or other instrument is not honored, for any reason
152     by the bank upon which it is drawn, Holder shall promptly notify Buyer and Seller of the Buyer's failure to deposit
153     the agreed upon Earnest Money/Trust Money. Buyer shall then have one (1) day to deliver Earnest Money/Trust
154     Money in immediately available funds to Holder. In the event Buyer does not deliver such funds, Buyer is in default
155     and Seller shall have the right to terminate this Agreement by delivering to Buyer or Buyer's representative written
156     notice via the Notification form or equivalent written notice. In the event Buyer delivers the Earnest Money/Trust
157     Money in immediately available funds in the form of a wire transfer or cashier's check to Holder before Seller elects
158     to terminate, Seller shall be deemed to have waived Seller's right to terminate, and the Agreement shall remain in full
159     force and effect.

160  B. **Handling of Earnest Money/Trust Money upon Receipt by Holder.** Earnest Money/Trust Money (if applicable) is
161     to be deposited promptly after the Binding Agreement Date or the agreed upon delivery date in this Earnest
162     Money/Trust Money section or as specified in the Special Stipulations section contained herein. Holder shall disburse
163     Earnest Money/Trust Money only as follows:
164        (a) at Closing to be applied as a credit toward Buyer's Purchase Price;
165        (b) upon a written agreement signed by all parties having an interest in the funds;
166        (c) upon order of a court or arbitrator having jurisdiction over any dispute involving the Earnest
167            Money/Trust Money;
168        (d) upon a reasonable interpretation of the Agreement; or
169        (e) upon the filing of an interpleader action with payment to be made to the clerk of the court having
170            jurisdiction over the matter.
171  Holder shall be reimbursed for, and may deduct from any funds interpleaded, its costs and expenses, including reasonable
172  attorney's fees. The prevailing party in the interpleader action shall be entitled to collect from the other party the costs
173  and expenses reimbursed to Holder. No party shall seek damages from Holder (nor shall Holder be liable for the same)
174  for any matter arising out of or related to the performance of Holder's duties under this Earnest Money/Trust Money
175  section. Earnest Money/Trust Money shall not be disbursed prior to fourteen (14) days after deposit unless written evidence
176  of clearance by bank is provided.

177  4. **Closing, Prorations, Special Assessments and Association Fees.**
178     A. **Closing Date.** This transaction shall be closed ("Closed") (evidenced by delivery of warranty deed and payment of
179        Purchase Price, the "Closing"), and this Agreement shall expire at 11:59 p.m. local time on the 31` _____ day of
180        July _____,2023_____ ("Closing Date"), or on such earlier date as may be agreed to by the
181        parties in writing. Such expiration does not extinguish a party's right to pursue remedies in the event of default. Any
182        extension of this date must be agreed to by the parties in writing via the Closing Date/Possession Date Amendment or
183        equivalent written agreement.
184        1. **Possession.** Possession of the Property is to be given (**Select the appropriate boxes below. Unselected items
185            shall not be part of this Agreement**):
186            ☑ at closing as evidenced by delivery of warranty deed and payment of Purchase Price;
187            **OR**
188            ☐ as agreed in the attached and incorporated Temporary Occupancy Agreement;
189     B. **Prorations.** Real estate taxes, rents, dues, maintenance fees, and association fees on said Property for the calendar
190        year in which the sale is Closed shall be prorated as of the Closing Date. In the event of a change or reassessment of
191        taxes for the calendar year after Closing, the parties agree to pay their recalculated share. Real estate taxes, rents,
192        dues, maintenance fees, and association fees for prior years and rollback taxes, if any, shall be paid by Seller.
193     C. **Greenbelt.** If property is currently classified by the property tax assessor as "Greenbelt" (minimum of 15 acres or
194        otherwise qualifies), does the Buyer intend to keep the property in the Greenbelt? (**Select the appropriate boxes
195        below. Unselected items shall not be part of this Agreement**):
196        ☑ Buyer intends to maintain the property's Greenbelt classification and acknowledges that it is Buyer's
197            responsibility to make timely and proper application to insure such status. Buyer's failure to timely and
198            properly make application shall result in the assessment of rollback taxes for which Buyer shall be obligated to

This form is copyrighted and may only be used in real estate transactions in which Jessica Haynes is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.

**TENNESSEE REALTORS**
**Copyright 2015 © Tennessee Association of Realtors®**
**RF404 – Lot/Land Purchase and Sale Agreement, Page 4 of 10**
Version 01/01/2023

Case 3:23-cv-00340   Document 56-3   Filed 03/13/24   Page 5 of 11 PageID #: 717

TRANSACTIONS
TransactionDesk Edition

dotloop signature verification:

pay. Buyer should consult the tax assessor for the county where the property is located prior to making this offer to verify that their intended use shall qualify for Greenbelt classification.

☐ Buyer does not intend to maintain the property's Greenbelt status and rollback taxes shall be payable by the Seller at time of closing.

D. **Special Assessments.** Special Assessments approved or levied prior to the Closing Date shall be paid by Seller at or prior to Closing unless otherwise agreed as follows: n/a .

E. **Association Fees.** Buyer shall be responsible for all homeowner or condominium association transfer fees, related administration fees (not including statement of accounts), capital expenditures/contributions incurred due to the transfer of the Property and/or like expenses which are required by the association, property management company and/or the bylaws, declarations or covenants for the Property (unless otherwise specifically addressed herein and/or unless specifically chargeable to Seller under applicable bylaws, declarations, and/or neighborhood covenants).

5. **Title and Conveyance.**
   A. Seller warrants that at the time of Closing, Seller shall convey or cause to be conveyed to Buyer or Buyer's assign(s) good and marketable title to said Property by general warranty deed, subject only to:
      (1) Zoning;
      (2) Setback requirements and general utility, sewer, and drainage easements of record on the Binding Agreement Date upon which the improvements do not encroach;
      (3) Subdivision and/or condominium declarations, covenants, restrictions, and easements of record on the Binding Agreement Date; and
      (4) Leases and other encumbrances specified in this Agreement.
   If title examination, closing or loan survey pursuant to Tenn. Code Ann. § 62-18-126, boundary line survey, or other information discloses material defects, Buyer may, at Buyer's discretion:
      (1) accept the Property with the defects **OR**
      (2) require Seller to remedy such defects prior to the Closing Date. Buyer shall provide Seller with written notice of such defects via the Notification form or equivalent written notice. If defects are not remedied prior to the Closing Date, Buyer may elect to extend the Closing Date by mutual written agreement evidenced by the Closing Date/Possession Amendment form or other written equivalent. If defects are not remedied by the Closing Date or any mutually agreed upon extension thereof, this Agreement shall terminate, and Buyer shall be entitled to a refund of Earnest Money/Trust Money.
   Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Tennessee shall insure at its regular rates, subject only to standard exceptions. The title search or abstract used for the purpose of evidencing good and marketable title must be acceptable to the title insurance agent and the issuing title insurance company. Seller agrees to execute such appropriate affidavits and instruments as may be required by the issuing title insurance company.
   B. **Deed.** Name(s) on Deed to be: Corey Lea
   It is the Buyer's responsibility to consult the closing agency or attorney prior to Closing as to the manner in which Buyer holds title.

6. **Inspections and other requirements made a part of this Agreement.**
   **ALL INSPECTIONS ARE TO BE MADE AT BUYER'S EXPENSE.** Buyer, its inspectors and/or representatives shall have the right and responsibility to enter the Property during normal business hours for the purpose of making inspections and/or tests. Buyer agrees to indemnify Seller for the acts of themselves, their inspectors and/or representatives in exercising their rights under this section. Buyer's obligations to indemnify Seller shall also survive the termination of this Agreement by either party, which shall remain enforceable. Buyer shall make such inspections as indicated in this section and either accept the Property in its present condition by written notice to Seller or terminate the Agreement as provided for in each section marked below.

   **[Select any or all of the following stipulations. Unselected items are not a part of this Agreement.]**
   ☐ A. **Feasibility Study.** Buyer shall have the right to review all aspects of the Property, including but not limited to, all governmental, zoning, soil and utility service matters related thereto. In consideration of Buyer having conducted Buyer's good faith review as provided for herein, the sufficiency of such consideration being hereby acknowledged, Buyer shall provide written notification to Seller and/or Seller's Broker within _____ days after Binding

This form is copyrighted and may only be used in real estate transactions in which Jessica Haynes is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.

TENNESSEE REALTORS
Copyright 2015 © Tennessee Association of Realtors®
RF404 – Lot/Land Purchase and Sale Agreement, Page 5 of 10
Version 01/01/2023

Case 3:23-cv-00340   Document 56-3   Filed 03/13/24   Page 6 of 11 PageID #: 718

TRANSACTIONS
TransactionDesk Edition

250  Agreement Date that Buyer is not satisfied with the results of such review, and this Agreement shall automatically
251  terminate and Broker shall promptly refund the Earnest Money/Trust Money to Buyer. If Buyer fails to provide notice,
252  then this contingency shall be deemed to have been waived by Buyer. Seller acknowledges and agrees that Buyer
253  and/or Buyer's agents and employees may have free access during normal business hours to visit the Property for the
254  purpose of (1) inspection thereof and (2) conducting such soil and other tests thereon as are deemed reasonably
255  necessary by Buyer. Buyer hereby agrees to indemnify and hold Seller, Broker, and Broker's Affiliated Licensees
256  harmless from and against any and all loss, injury, cost, or expense associated with Buyer's inspection of and entry
257  upon Property.

258  ☐ **B. Building Permit.** This Agreement is contingent upon Buyer's ability to acquire all required licenses and permits
259  from the appropriate governmental authority to make specific improvements on the Property. In consideration of
260  Buyer, having acted in good faith, being unable to acquire all required licenses and permits from the appropriate
261  governmental authority to make specific improvements to the Property, the sufficiency of such consideration hereby
262  being acknowledged, Buyer may terminate this agreement by providing written notification to Seller and/or Seller's
263  Broker within _____ days after the Binding Agreement Date. Upon termination, holder shall promptly refund the
264  Earnest Money/Trust Money to Buyer. If Buyer fails to provide said notice, then this contingency shall be deemed to
265  have been waived by Buyer.

266  ☐ **C. Permit for Sanitary Septic Disposal System.** This Agreement is contingent upon the Buyer's ability to obtain
267  a permit for a sanitary septic disposal system from the respective Tennessee Ground Water Protection Office for the
268  county in which the Property is located (generally, located at the local Health Department) to be placed on the Property
269  in a location consistent with Buyer's planned improvements. In consideration of Buyer, having acted in good faith,
270  being unable to meet this condition, the sufficiency of such consideration being hereby acknowledged, Buyer must
271  notify Seller and/or Seller's Broker in writing within _____ days after the Binding Agreement Date. With proper
272  notice, the Agreement is voidable by Buyer and Earnest Money/Trust Money refunded. If Buyer fails to provide said
273  notice, this contingency shall be deemed to have been waived by Buyer.

274  ☐ **D. Rezoning.** This Agreement is contingent upon the Property being rezoned to _____
275  by the appropriate governmental authorities on or before _____. (Buyer or Seller)
276  _____ shall be responsible for pursuing such rezoning, and paying all associated cost. All
277  rezoning applications shall be submitted to Seller for Seller's approval prior to filing, which approval shall not be
278  unreasonably withheld. All parties agree to cooperate, to sign the necessary documentation and to support the rezoning
279  application. In consideration of Buyer having acted in good faith, Buyer may provide notification to Seller and/or
280  Seller's Broker within 48 hours after the above date that the Property cannot be so zoned, the sufficiency of such
281  consideration being hereby acknowledged, and this Agreement shall automatically terminate. Upon termination,
282  holder shall promptly refund the Earnest Money/Trust Money to Buyer. If Buyer fails to provide said notice, then this
283  contingency shall be deemed to have been waived by Buyer.

284  ☐ **E. Well Test.** This Agreement is contingent upon the well water serving the Property passing testing for suitability
285  for drinking as performed by a testing laboratory selected by Buyer, or required by Buyer's Lender, prior to Closing.
286  Buyer shall be responsible for ordering, supervising and paying for any such well water sample test. This Agreement
287  shall also be contingent upon said well providing an adequate quantity of water to serve Buyer's intended purpose
288  for the Property. In consideration of Buyer, having conducted a well test as provided for herein, the sufficiency of
289  such consideration being hereby acknowledged, Buyer may provide written notification to Seller and/or Seller's
290  Broker within _____ days after the Binding Agreement Date that test results are unacceptable, and in such event this
291  Agreement shall automatically terminate, and Holder shall promptly refund the Earnest Money/Trust Money to Buyer.
292  If Buyer fails to provide said notice, then this contingency shall be deemed to have been waived by Buyer.

293  ☐ **F. Other Inspections.** See Special Stipulations for additional inspections required by Buyer.
294  ☐ **G. No Inspection Contingencies.** Buyer accepts the Property in its present condition. All parties acknowledge
295  and agree that the Property is being sold "AS IS" with any and all faults.

296  7. **Final Inspection.** Buyer and/or Buyer's inspectors/representatives shall have the right to conduct a final inspection of
297  Property on the Closing Date or within _____ day(s) prior to Closing Date only to confirm Property is in the same or better
298  condition as it was on the Binding Agreement Date, normal wear and tear excepted, and to determine that all
299  repairs/replacements have been completed. Property shall remain in such condition until the Closing Date at Seller's
300  expense. Closing of this sale constitutes acceptance of Property in its condition as of the time of Closing, unless otherwise
301  noted in writing.

This form is copyrighted and may only be used in real estate transactions in which Jessica Haynes _____ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.


**TENNESSEE REALTORS**
**Copyright 2015 © Tennessee Association of Realtors®**
**RF404 – Lot/Land Purchase and Sale Agreement, Page 6 of 10**

Version 01/01/2023

8. **Buyer's Additional Due Diligence Options.** If any of the matters below are of concern to Buyer, Buyer should address the concern by specific contingency in the Special Stipulations section of this Agreement.

   A. **Survey and Flood Certification.** Survey Work and Flood Certifications are the best means of identifying boundary lines and/or encroachments and easements or flood zone classifications. Buyer may obtain a survey, closing loan survey or Boundary Line Survey and Flood Zone Certifications.

   B. **Insurability.** Many different issues can affect the insurability and the rates of insurance for property. These include factors such as changes in the Flood Zone Certifications, changes to the earthquake zones maps, the insurability of the buyer, and previous claims made on the Property. It is the right and responsibility of Buyer to determine the insurability, coverage and the cost of insuring the Property. It is also the responsibility of Buyer to determine whether any exclusions shall apply to the insurability of said Property.

   C. **Water Supply.** The system may or may not meet state and local requirements. It is the right and responsibility of Buyer to determine the compliance of the system with state and local requirements. [For additional information on this subject, request the "Water Supply and Waste Disposal Notification" form.]

   D. **Waste Disposal.** The system may or may not meet state and local requirements. It is the right and responsibility of Buyer to determine the compliance of the system with state and local requirements. In addition, Buyer may, for a fee, obtain a septic system inspection letter from the Tennessee Department of Environment and Conservation, Division of Ground Water Protection. [For additional information on this subject, request the "Water Supply and Waste Disposal Notification" form.]

   E. **Title Exceptions.** At Closing, the general warranty deed shall be subject to subdivision and/or condominium declarations, covenants, restrictions and easements of record, which may impose obligations and may limit the use of the Property by Buyer, including the property being part of a Planned Unit Development (PUD). There may also be fees and assessments connected with these exceptions.

   F. **Toxic/Foreign Substances.** Testing (including but not limited to a Phase 1 study) may be performed to determine the presence of radon or other potentially toxic substances. Buyer may wish to inquire or have the property inspected for underground tanks, tires, appliances, garbage, foreign and/or unnatural materials, asbestos, polychlorinated biphenyl (PCB's), ureaformaldehyde, methane gas, radioactive material, or methamphetamine production.

   G. **Land Issues.** Buyer may be interested in learning more about the presence of any fill, mine shaft, well, diseased or dead trees or private or non-dedicated roadways on the Property as well as any sliding, settling, earth movement, upheaval or earth stability problems detected through inspections or evaluations previously performed on property or to be performed.

   H. **Rights and Licenses.** Certain Property may contain mineral, oil and timber rights which may or may not transfer with the Property. It is possible licenses or usage permits were granted for crops, mineral, water, grazing, timber, hunting or fishing, including a Crop Rotation Program. Buyers should consult their closing agency for questions regarding any leases which may be in the chain of title.

9. **Disclaimer.** It is understood and agreed that the real estate firms and real estate licensee(s) representing or assisting Seller and/or Buyer and their brokers (collectively referred to as "Brokers") are not parties to this Agreement and do not have or assume liability for the performance or nonperformance of Seller or Buyer. Buyer and Seller agree that Brokers shall not be responsible for any of the following, including but not limited to, those matters which could have been revealed through a survey, flood certification, title search or inspection of the Property; the insurability of the Property or cost to insure the Property; for the condition of the Property, any portion thereof, or any item therein; for building products and construction techniques; for any geological issues present on the Property; for any issues arising out of the failure to physically inspect the Property prior to entering into this Agreement and/or Closing; for the necessity or cost of any repairs to the Property; for hazardous or toxic materials; for the tax or legal consequences of this transaction; for the availability, capability, and/or cost of utility, sewer, septic, or community amenities; for any proposed or pending condemnation actions involving the Property; for acreage or square footage; for applicable boundaries of school districts or other school information; for the appraised or future value of the Property; for any condition(s) existing off the Property which may affect the Property; for the terms, conditions, and availability of financing; and for the uses and zoning of the Property whether permitted or proposed. Buyer and Seller acknowledge that Brokers are not experts with respect to the above matters and that they have not relied upon any advice, representations or statements of Brokers (including their firms and affiliated licensees) and waive and shall not assert any claims against Brokers (including their firms and affiliated licensees) involving same. Buyer and Seller understand that it has been strongly recommended that if any of these or any other matters concerning the Property are of concern to them, that they secure the services of appropriately credentialed experts and professionals of Buyer's or Seller's choice for the independent expert advice and counsel relative thereto. Buyer and Seller acknowledge

This form is copyrighted and may only be used in real estate transactions in which Jessica Haynes is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.

TENNESSEE REALTORS®
**Copyright 2015 © Tennessee Association of Realtors®**
**RF404 – Lot/Land Purchase and Sale Agreement, Page 7 of 10**

Version 01/01/2023



that photographs, marketing materials, and digital media used in the marketing of the property may continue to remain in publication after Closing. Buyer and Seller agree that Brokers shall not be liable for any uses of photographs, marketing materials or digital media which the Broker is not in control.

10. **Brokerage.** As specified by separate agreement, Seller agrees to pay Listing Broker at Closing the agreed upon compensation. The Listing Broker shall direct the closing agency to pay the Selling Broker, from the compensation received, an amount in accordance with the terms and provisions specified by separate agreement. The parties agree and acknowledge that the Brokers involved in this transaction may receive compensation from more than one party. All parties to this Agreement agree and acknowledge that any real estate firm involved in this transaction shall be deemed a third party beneficiary only for the purposes of enforcing their commission rights, and as such shall have the right to maintain an action on this Agreement for any and all compensations due and any reasonable attorney's fees and court costs.

11. **Default.** Should Buyer default hereunder, the Earnest Money/Trust Money shall be forfeited as damages to Seller and shall be applied as a credit against Seller's damages. Seller may elect to sue, in contract or tort, for additional damages or specific performance of the Agreement, or both. Should Seller default, Buyer's Earnest Money/Trust Money shall be refunded to Buyer. In addition, Buyer may elect to sue, in contract or tort, for damages or specific performance of this Agreement, or both. In the event that any party hereto shall file suit for breach or enforcement of this Agreement (including suits filed after Closing which are based on or related to the Agreement), the prevailing party shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees. In the event that any party exercises its right to terminate due to the default of the other pursuant to the terms of this Agreement, the terminating party retains the right to pursue any and all legal rights and remedies against the defaulting party following termination. The parties hereby agree that all remedies are fair and equitable and neither party shall assert the lack of mutuality of remedies, rights and/or obligations as a defense in the event of a dispute.

12. **Other Provisions.**
    A. **Binding Effect, Entire Agreement, Modification, Assignment, and Binding Agreement Date.** This Agreement shall be for the benefit of, and be binding upon, the parties hereto, their heirs, successors, legal representatives and assigns. This Agreement constitutes the sole and entire agreement between the parties hereto and no modification of this Agreement shall be binding unless signed by all parties or assigns to this Agreement. No representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto. It is hereby agreed by both Buyer and Seller that any real estate agent working with or representing either party shall not have the authority to bind the Buyer, Seller, or any assignee to any contractual agreement unless specifically authorized in writing within this Agreement. Any assignee shall fulfill all the terms and conditions of this Agreement. The parties hereby authorize either licensee to insert the time and date of receipt of the notice of acceptance of the final offer. The foregoing time and date shall be referred to for convenience as the Binding Agreement Date for purposes of establishing performance deadlines.
    B. **Survival Clause.** Any provision contained herein, which by its nature and effect is required to be performed after Closing shall survive the Closing and delivery of the deed, and shall remain binding upon the parties to this Agreement and shall be fully enforceable thereafter.
    C. **Governing Law and Venue.** This Agreement is intended as a contract for the purchase and sale of real property and shall be interpreted in accordance with the laws and in the courts of the State of Tennessee.
    D. **Time of Essence.** Time is of the essence in this Agreement.
    E. **Terminology.** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; (2) all pronouns shall mean and include the person, entity, firm or corporation to which they relate; (3) the masculine shall mean the feminine and vice versa; and (4) the term day(s) used throughout this Agreement shall be deemed to be calendar day(s) ending at 11:59 p.m. local time unless otherwise specified in this Agreement. Local time shall be determined by the location of Property. **In the event a performance deadline**, other than the Closing Date (as defined herein), Date of Possession (as defined herein), and Offer Expiration Date (as defined in Time Limit of Offer Section), occurs on a Saturday, Sunday or legal holiday, the performance deadline shall extend to the next following business day. Holidays as used herein are those days deemed federal holidays pursuant to 5 U.S.C. § 6103. In calculating any time period under this Agreement, the commencement day shall be the day following the initial date (e.g. Binding Agreement Date).
    F. **Responsibility to Cooperate.** Buyer and Seller agree to timely take such actions and produce, execute, and/or deliver such information and documentation as is reasonably necessary to carry out the responsibilities and obligations of this Agreement. Except as to matters which are occasioned by clerical errors or omissions or erroneous information, the approval of the closing documents by the parties shall constitute their approval of any differences between this Agreement and the Closing. Buyer and Seller agree that if requested after Closing, they shall correct any documents

This form is copyrighted and may only be used in real estate transactions in which Jessica Haynes is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.


**TENNESSEE REALTORS**
**Copyright 2015 © Tennessee Association of Realtors®**
**RF404 – Lot/Land Purchase and Sale Agreement, Page 8 of 10**

Version 01/01/2023

dotloop signature verification:

and pay any amounts due where such corrections or payments are appropriate by reason of mistake, clerical errors or omissions, or the result of erroneous information.

G. **Notices.** Except as otherwise provided herein, all notices and demands required or permitted hereunder shall be in writing and delivered either (1) in person; (2) by a prepaid overnight delivery service; (3) by facsimile transmission (FAX); (4) by the United States Postal Service, postage prepaid, registered or certified, return receipt requested; or (5) Email. **NOTICE** shall be deemed to have been given as of the date and time it is actually received. Receipt of notice by the real estate licensee or the Broker assisting a party as a client or customer shall be deemed to be notice to that party for all purposes under this Agreement as may be amended, unless otherwise provided in writing.

H. **Risk of Loss.** The risk of hazard or casualty loss or damage to the Property shall be borne by Seller until transfer of title. If casualty loss prior to Closing exceeds 10% of the Purchase Price, Seller or Buyer may elect to terminate this Agreement with a refund of Earnest Money/Trust Money to Buyer.

I. **Equal Housing.** This Property is being sold without regard to race, creed, color, sex, religion, handicap, familial status, or national origin.

J. **Severability.** If any portion or provision of this Agreement is held or adjudicated to be invalid or unenforceable for any reason, each such portion or provision shall be severed from the remaining portions or provisions of this Agreement, and the remaining portions or provisions shall be unaffected and remain in full force and effect. In the event that the contract fails due to the severed provisions, then the offending language shall be amended to be in conformity with state and federal law.

K. **Alternative Dispute Resolution.** In the event the parties elect to utilize Alternative Dispute Resolution, incorporate "Resolution of Disputes by Mediation Addendum/Amendment" (RF629).

L. **Contract Construction.** This Agreement or any uncertainty or ambiguity herein shall not be construed against any party but shall be construed as if all parties to this Agreement jointly prepared this Agreement.

M. **Section Headings.** The Section Headings as used herein are for reference only and shall not be deemed to vary the content of this Agreement or limit the scope of any Section.

13. **Method of Execution.** The parties agree that signatures and initials transmitted by facsimile, other photocopy transmittal, or by transmittal of digital signature as defined by the applicable State or Federal law shall be acceptable and may be treated as originals and that the final Lot/Land Purchase and Sale Agreement containing all signatures and initials may be executed partially by original signature and partially on facsimile, other photocopy documents, or by digital signature as defined by the applicable State or Federal law.

14. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement: n/a

15. **Special Stipulations.** The following Special Stipulations, if conflicting with any preceding section, shall control:

n/a

16. **Time Limit of Offer.** This Offer may be withdrawn at any time before acceptance with Notice. Offer terminates if not countered or accepted by _____ o'clock ☐ a.m./☐ p.m. on the _____ day of _____, _____.

This form is copyrighted and may only be used in real estate transactions in which Jessica Haynes _____ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.

TENNESSEE REALTORS

Copyright 2015 © Tennessee Association of Realtors®
RF404 – Lot/Land Purchase and Sale Agreement, Page 9 of 10

Version 01/01/2023

TRANSACTIONS
TransactionDesk Edition

458  LEGAL DOCUMENTS: This is an important legal document creating valuable rights and obligations. If you have any
459  questions about it, you should review it with your attorney. Neither the Broker nor any Agent or Facilitator is
460  authorized or qualified to give you any advice about the advisability or legal effect of its provisions.

461  NOTE: Any provisions of this Agreement which are preceded by a box "☐" must be marked to be a part of this
462  Agreement. By affixing your signature below, you also acknowledge that you have reviewed each page and have
463  received a copy of this Agreement.

464  WIRE FRAUD WARNING: Never trust wiring instructions sent via email. Cyber criminals are hacking email accounts
465  and sending emails with fake wiring instructions. These emails are convincing and sophisticated. Always independently
466  confirm wiring instructions in person or via a telephone call to a trusted and verified phone number. Never wire money
467  without double-checking that the wiring instructions are correct. NEVER ACCEPT WIRING INSTRUCTIONS FROM
468  YOUR AGENT OR BROKER.   *CL* Buyer Initials _____ Buyer Initials
          04/04/23 6:37 AM CDT
          dotloop verified

469  Buyer hereby makes this offer.
470  *Corey Lex*    dotloop verified
                   04/04/23 6:37 AM CDT
                   NFAX-G5BW-LKQG-AI9J
471  BUYER                                        BUYER
472  04/03/2023  at _____ o'clock ☐am/ ☐pm    04/03/2023  at _____ o'clock ☐am/ ☐pm
473  Offer Date                                   Offer Date

474  Seller hereby:
475      ☐ ACCEPTS – accepts this offer.
476      ☐ COUNTERS – accepts this offer subject to the attached Counter Offer(s).
477      ☐ REJECTS – rejects this offer and makes no counter offer.
478  _____             _____
479  SELLER                                       SELLER
480  _____ at _____ o'clock ☐am/ ☐pm           _____ at _____ o'clock ☐am/ ☐pm
481  Date                                         Date

482  **Acknowledgement of Receipt.** _____ hereby acknowledges receipt of the final accepted offer
483  on _____ at _____ o'clock ☐am/ ☐pm, and this shall be referred to as the Binding Agreement Date for
484  purposes of establishing performance deadlines as set forth in the Agreement.

For Information Purposes Only:
Listing Company: Tim Thompson Premier REALTORS        Selling Company: Team George Weeks Real Estate, LLC
Listing Firm Address: 148 5th Ave. N.                 Selling Firm Address: 401 W Main St Murfreesboro, TN 37130
Firm License No.: 261694                              Firm License No.: 264307
Firm Telephone No.: (615) 790-8884                    Firm Telephone No.: 615-948-4098
Listing Licensee: Tim Thompson                        Selling Licensee: Jessica Haynes
Licensee License Number: 261694                       Licensee License Number: 325313
Licensee Email: timtrealtor@gmail.com                 Licensee Email: BuywithJessicaHaynes@gmail.com
Licensee Cellphone No.: (615) 207-3295(               Licensee Cellphone No.: 615-984-9644
Home Owner's / Condominium Association ("HOA/COA") / Property Management Company:
None
Phone: _____                 Email: _____

NOTE: This form is provided by Tennessee REALTORS® to its members for their use in real estate transactions and is to be used as is. By downloading
and/or using this form, you agree and covenant not to alter, amend, or edit said form or its contents except as where provided in the blank fields, and agree
and acknowledge that any such alteration, amendment or edit of said form is done at your own risk. Use of the Tennessee REALTORS® logo in conjunction
with any form other than standardized forms created by Tennessee REALTORS® is strictly prohibited. This form is subject to periodic revision and it is the
responsibility of the member to use the most recent available form.

This form is copyrighted and may only be used in real estate transactions in which Jessica Haynes _____ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615-321-1477.



Copyright 2015 © Tennessee Association of Realtors®                   Version 01/01/2023
RF404 – Lot/Land Purchase and Sale Agreement, Page 10 of 10

