# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| COREY LEA ) | |
| ) | |
| v. ) | Case No. 3:23-cv-00340 |
| ) | |
| ACTING SECRETARY OF AGRICULTURE, ) | |
| GARY WASHINGTON, *et al.* ) | |

**TO:** Honorable Aleta A. Trauger, United States District Judge

### R E P O R T   A N D   R E C O M E N D A T I O N

By Order entered April 17, 2023 (Docket Entry No. 6), this *pro se* case was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. § 636(b)(1)(A) and (B), Rule 72 of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Pending before the Court is the motion to dismiss (Docket Entry No. 61) filed by Defendants Thomas Vilsack, Secretary of Agriculture, and the United States Department of Agriculture. Since the filing of the motion, then Secretary of Agriculture Vilsack was replaced by Acting Secretary of Agriculture Gary Washington, whom the Court ordered substituted as the party defendant pursuant to Fed. R. Civ. P. 25(d). (Docket Entry No. 80.) Plaintiff opposes the motion. For the reasons set out below, the undersigned respectfully recommends that the motion be granted.

### I. BACKGROUND

Corey Lea ("Plaintiff") is a Black "rancher and entrepreneur" who resides in Arrington, Tennessee. During approximately the last 15 years, he has brought numerous lawsuits against the United States Department of Agriculture ("USDA") and its officials based on alleged wrongdoings

by the USDA. In addition to the instant lawsuit, he has filed three other lawsuits against the USDA in this Court.[1] Generally, Plaintiff has not been successful in his lawsuits.

On April 13, 2023, he initiated this lawsuit by filing a *pro se* complaint against Thomas Vilsack ("Vilsack"), the Secretary of Agriculture at the time,[2] and the USDA. Complaint (Docket Entry No. 1). Seeking various forms of relief, Plaintiff's complaint raises five claims based on allegations of racial discrimination in the manner in which the USDA had, or had not, resolved administrative claims and discrimination complaints brought by Black farmers and in the manner in which the USDA and then-Secretary Vilsack administered and implemented Section 1006 of the American Rescue Plan Act ("ARPA"), Pub. L. No. 117-2, 135 Stat. 4 (2021), and Sections 22006 and 22007 of the Inflation Reduction Act ("IRA"), Pub. L. 117-169, 136 Stat. 1818 (2022).

The ARPA and IRA are two multi-trillion dollar stimulus bills passed by Congress in the wake of the COVID-19 pandemic and the resulting economic downturn. Each bill contains provisions authorizing the USDA to provide financial and other assistance in the agricultural sector of the economy. Section 1006 of ARPA, as subsequently amended by Section 22007 the IRA ("Section 22007"), establishes a variety of programs and funding to assist farmers, ranchers, or forest landowners. One of those programs provides that:

> In addition to amounts otherwise available, there is appropriated to the Secretary of Agriculture for fiscal year 2022, to remain available until September 30, 2031, out of any money in the Treasury not otherwise appropriated, $2,200,000,000 for a program to provide financial assistance, including the cost of any financial assistance, to farmers, ranchers, or forest landowners determined to have experienced discrimination prior to January 1, 2021, in Department of Agriculture

---

[1] *Lea v. Farmers Nat'l Bank, et al.*, No. 3:15-cv-00595 (M.D. Tenn 2015); *Lea v. United States Dep't of Agric., et al.*, 3:16-cv-00735 (M.D. Tenn 2016); *Lea, et al v. United States Dep't of Agric., et al.*, 3:21-cv-00468 (M.D. Tenn. 2021).

[2] As noted above, by order entered January 31, 2025, the Court substituted the acting Secretary of Agriculture for Vislack. (Docket Entry No. 80.)

> farm lending programs, under which the amount of financial assistance provided to a recipient may be not more than $500,000, as determined to be appropriate based on any consequences experienced from the discrimination, which program shall be administered through 1 or more qualified nongovernmental entities selected by the Secretary subject to standards set and enforced by the Secretary.

Section 1006(e) of the ARPA (as amended by Section 22007 of the IRA) ("Section 1006(e)").

The IRA provides for additional financial relief for distressed farm loan borrowers in Section 2006, which provides:

> In addition to amounts otherwise available, there is appropriated to the Secretary for fiscal year 2022, out of amounts in the Treasury not otherwise appropriated, $3,100,000,000, to remain available until September 30, 2031, to provide payments to, for the cost of loans or loan modifications for, or to carry out section 331(b)(4) of the Consolidated Farm and Rural Development Act (7 U.S.C. 1981(b)(4)) with respect to distressed borrowers of direct or guaranteed loans administered by the Farm Service Agency under subtitle A, B, or C of that Act (7 U.S.C. 1922 through 1970). In carrying out this section, the Secretary shall provide relief to those borrowers whose agricultural operations are at financial risk as expeditiously as possible, as determined by the Secretary.

Section 22006 of the IRA ("Section 22006").

In response to Plaintiff's complaint, the original Defendants sought dismissal of the lawsuit. (Docket Entry No. 22.) In support of their motion, Defendants pointed out that much of Plaintiff's complaint was simply a recasting of claims and allegations related to the foreclosure of his farm in Kentucky and a subsequent administrative discrimination complaint that he filed, claims and allegations that were extensively litigated by Plaintiff in other cases in this District and in the United States District Court for the Western District of Kentucky. (*Id*.) Defendants specifically noted that the Western District of Kentucky, in *Lea v. U.S. Dep't of Agric.*, 2014 WL 2435903, at *1 (W.D. Ky. May 29, 2014), enjoined Plaintiff from filing any additional civil lawsuits in the Western District of Kentucky that alleged or asserted factual or legal claims based upon or arising out of the Kentucky foreclosure. Defendants further noted that this Court had twice dismissed lawsuits brought Plaintiff against Vilsack and the USDA in the Middle District of

3

Tennessee that were premised in some manner upon claims related to the Kentucky foreclosure and the administrative discrimination complaint that he filed. *See Lea v. USDA, et al.*, No. 16-00735, 2018 WL 721381 (M.D.Tenn. Feb. 6, 2018); *aff'd*, No. 18-5535, 2019 WL 2246555 (6th Cir. Feb. 5, 2019); *Lea, et al. v. Vilsack, et al.*, No. 3:21-CV-00468, 2023 WL 1141833 (M.D.Tenn. Jan. 30, 2023), *aff'd sub nom. Lea v. U.S. Dep't of Agric.*, 2024 WL 841436 (6th Cir. Feb. 28, 2024).

Prior to resolution of the motion to dismiss, Plaintiff made multiple filings that sought to add new claims, allegations, defendants, and requests for relief to this lawsuit, and that, in some instances, seemed to contradict his original pleading. Construing these filings as requests by Plaintiff to amend his complaint, the Court determined that an amended complaint from Plaintiff was necessary to clarify his case, and directed Plaintiff to file "a comprehensive, amended complaint that encompasses the entirety of his allegations and that clearly and distinctly sets out his claims." February 12, 2024 Order (Docket Entry No. 42) at 4. The Court advised Plaintiff that, in filing his amended complaint, he should (1) avoid an excessive or bloated amended complaint that includes voluminous legal arguments, such as the 58-page motion for further relief (Docket Entry No. 38) he had previously filed, and (2) adhere to the pronouncement of Rule 8(a)(2) of the Federal Rules of Civil Procedure that he file a "short and plain statement" showing that he is entitled to relief. (*Id*. at 4-5.) Considering the requirement that Plaintiff file an amended complaint, the Court dismissed the then pending motion to dismiss without prejudice. (*Id*. at 6-7.)[3]

Plaintiff thereafter timely filed his First Amended Complaint (the "FAC"), which is the operative pleading in this lawsuit. (Docket Entry No. 44.) The USDA and Secretary remain in

---

[3] In the Order, the Court also addressed several other pending motions.

4

the action and have filed the now pending motion to dismiss in response to the FAC. Three other private entities – Windsor Group, LLC, The Midtown Group, and Analytic Acquisitions – are also named as defendants in the FAC. An appearance has been entered on behalf of Analytic Acquisitions (Docket Entry No. 68), but it has not responded to the FAC. Neither of the other two private entities have appeared in the case, and it is unclear whether they have been served with process.

In addition to Defendants' motion to dismiss, there is also pending before the Court a motion by Plaintiff for a temporary preliminary injunction (Docket Entry No. 52), and a motion for entry of default against Windsor Group, LLC, and The Midtown Group (Docket Entry No. 74). Both motions are also addressed herein.

## II. PLAINTIFF'S FAC

Plaintiff's FAC appears to be an attempt by him to comply with the Court's directive to clearly set out his allegations and claims, and he has not merely refiled his original complaint with minimal additions. Nevertheless, the FAC remains difficult to follow because it intermingles factual allegations that are specific to Plaintiff with legal and policy argument regarding the USDA and with assertions about actions involving generic "Black" and "White" farmers. As best the Court can determine from the FAC, the specific factual allegations pertaining to Plaintiff are as follows.

At some point after May 22, 2008, Plaintiff filed a complaint of discrimination with the USDA that he alleges was accepted but never resolved. (Docket Entry No. 44 at ¶ 2.)[4] In October

---

[4] The FAC is vague about when the discrimination complaint was filed and what it involved. However, Plaintiff indicates in his response to the motion to dismiss that the complaint is "08-1401." Response (Docket Entry No. 69) at 15.

2022, the USDA provided Plaintiff with financial relief pursuant to Section 22006 as a distressed borrower when $228,083.86 was applied to an outstanding loan that was administered by the Farm Service Agency, leaving him with a remaining liability of approximately $19,500.00 on the loan. (*Id*. at ¶ 30.) Plaintiff alleges that he requested a hearing about the relief but that the administrative law judge refused to docket his complaint or set a hearing. (*Id*. at ¶ 36.) Plaintiff alleges that he thereafter applied for a "farm ownership and farm operating loan for land located in Rutherford County, Tennessee" but that the loan was denied "stating that Plaintiff already had an existing farm loan in Kentucky." (*Id*. at ¶ 37.) Plaintiff states that he filed another request for a hearing but the Office of Administrative Law Judges refused to docket his case. (*Id.* at ¶ 41.) In January 2024, Plaintiff applied for another "farm ownership and farm operation loan in Rutherford County, Tennessee" that was denied because of two outstanding delinquent loans. (*Id*. at ¶ 43.) Plaintiff alleges that he filed a complaint about this denial with the USDA's Office for Civil Rights, which was accepted and docketed as Complaint Number 2024-01-00015519. (*Id*. at ¶ 42.)

Based upon these allegations, Plaintiff sets out what appears to be three theories of wrongdoing by Defendants. First, he claims that, because his 2008 discrimination complaint has not been resolved, the statutory moratorium provisions set out in the Food, Conservation, and Energy Act of 2008 at 7 U.S.C. § 1981a(b)(1) and the implementing regulations set out at 7 C.F.R. § 766.358 should have been followed to prevent the USDA from providing the debt relief that was provided to him in 2022 through Section 22006. (Docket Entry No 44 at ¶¶ 14-15 and 44-48.) He contends that the USDA's act of providing him with this debt relief has harmed him by preventing him from obtaining the new farm loans in 2023 and 2024. (*Id*. at ¶ 15.) He further alleges that the denial of administrative hearings was unlawful and that Defendants have conspired to create schemes to harm him. (*Id.* at ¶¶ 2 and 56.)

Second, he claims that Defendants have committed racial discrimination against him and other Black farmers because the USDA has: denied or not acted upon discrimination complaints made by Black Farmers; failed to resolve discrimination complaints through Section 1006(e); implemented an unequal administrative system for Black farmers; failed to apply the statutory moratorium to Black farmers; provided more relief to White farmers; and, provided White Farmers with financial relief through direct deposits instead of through debt relief, debt write-downs, or checks. (*Id*. at ¶¶16, 49-51, 52, and 56-57.)

Finally, Plaintiff sets out 17 pages of complaints about the manner in which the USDA conducts its activities, claiming that it has: wrongfully implemented relief programs and allocated relief under the ARPA and IRA; wrongfully administered discrimination complaints; wrongfully relied upon private entities – Windsor Group, LLC, The Midtown Group, and Analytic Acquisitions – to implement Section 1006(e)/Section 22007 in violation of the "private nondelegation doctrine"; engaged in retaliation; acted arbitrarily, capriciously, and not in accordance with the law; and failed comply with the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, with respect to the implementation of, and adherence to, rules and procedures. (*Id*. at ¶¶ 62-121.)

The relief requested by Plaintiff is somewhat confusing and contradictory. Although Plaintiff styles his FAC as one "for declaratory and injunctive relief" (*id*. at 1), the actual relief section of the FAC does not request any injunctive relief and lists 16 specific requests for declaratory judgments. (*Id*. at 38-41.) Additionally, even though Plaintiff has not included in the FAC the requests for damages that were included in one of his requests to amend, *see* Motion for Further Relief (Docket Entry No. 38), he nonetheless asserts that, because of their unlawful

7

actions, "Defendants need to replace 72 acres of farm and 16 years of economic damages." (*Id*. at 54.)

### III.  MOTION TO DISMISS, RESPONSE, AND REPLY

Defendants move to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6). After recounting the lengthy history of Plaintiff's litigation with the USDA and its officials, *see* Memorandum in Support (Docket Entry No. 62) at 2-7, which the Court sees no need to again summarize here, Defendants first argue that the instant case is merely another attempt by Plaintiff to revisit claims arising from the 2009 Kentucky farm foreclosure, claims which Defendants asserts have been extensively addressed and rejected in Plaintiff's prior lawsuits. Defendants argue that, as found in several of those lawsuits, the Middle District of Tennessee is not the proper venue for such claims. (*Id*. at 11-13.) They further argue that, to the extent the FAC relies on claims related to the loss of the farm in Kentucky or claims that were or could have been raised in his previous lawsuits, such claims are barred by the doctrine of *res judicata*. (*Id*. at 13-16.) Defendants next argue that Plaintiff lacks standing because his lawsuit is not based upon an actual injury traceable to Defendants' conduct that is redressable by the relief that he seeks. (*Id.* at 16-20.) Finally, Defendants argue that Plaintiff's allegations simply do not support claims for relief because they are either speculative and conclusory or do not show that he has suffered a legal harm. (*Id*. at 21-25.)

In response, Plaintiff contends that venue does exist in this Court, especially considering his allegation that he was denied loans for property in Rutherford County, Tennessee, and that *res judicata* does not apply. Response (Docket Entry No. 69) at 1-13. Plaintiff contends that his allegations of racial disparity in the manner financial relief under Sections 22006 and his contention that he was denied the opportunity to contest the write-down of his debt are sufficient

8

to show an injury for the purposes of standing. (*Id*. at 13-16.) With respect to Defendant's failure to state a claim argument, Plaintiff contends that, although he was notified by a letter dated March 27, 2024, that the remainder of his loan debt has been paid by another payment of financial relief under Section 22006 and that he is now eligible for future federal benefits, his requested declaratory relief would still "curtail systemic discrimination of the agency who still is discriminating against Black farmers, such as the Plaintiff. Moreover, the Preliminary Injunction submitted by the Plaintiff is for an imminent harm caused by the Federal Defendants that directly related to the continued discrimination and denial of equal protection and due process under the Fifth Amendment." (*Id*. at 17.) Finally, Plaintiff argues that Defendants have conceded certain claims in this case. (*Id.* at 17-18.)

In their reply, Defendants argue that: (1) Plaintiff cannot simply circumvent the binding results of his prior litigation by intermingling his old claims with new allegations; (2) Plaintiff's claims have become moot by his own admission that his outstanding debts have now been paid off; (3) Plaintiff did not decline the financial relief on his loan debts despite claiming that it was part of a conspiracy against him; (4) Plaintiff's contention in his response that he is entitled to pursue equitable subrogation is meritless based on the facts of this case; and, (5) Plaintiff's assertions related to the manner of financial relief under Section 22006 do not support a viable claim. *See* Reply (Docket Entry No. 70).

## IV. STANDARD OF REVIEW

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack "questions merely the sufficiency of the pleading," and the trial court therefore takes the allegations of the complaint as true. *Wayside Church v. Van Buren Cnty.*, 847

9

F.3d 812, 816 (6th Cir. 2017) (quoting *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007); citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).[5] "A party seeking to invoke the jurisdiction of the federal courts ... bears the burden of establishing that such jurisdiction exists." *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008) (*per curiam*).

When a defendant asserts that venue is improper in the court in which a lawsuit is filed and seeks dismissal pursuant to Rule 12(b)(3), the burden of establishing venue falls on the plaintiff, and the Court may examine facts outside of the complaint but "must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Ian v. Bottom Line Record Co.*, NO. 3:16-cv-00187, 2016 WL 8711721, at *2 (M.D. Tenn. July 1, 2016) (Crenshaw, J.) (quoting *Gone to the Beach, LLC, v. Choicepoint Serv.*, 434 F. Supp. 2d 534, 536B37 (W.D. Tenn. 2006)) (cleaned up). *See also Marion v. Conley*, No. 3:06-CV-268, 2006 WL 4608613, at *1 (E.D. Tenn. Oct. 4, 2006) (same).

A Rule 12(b)(6) motion to dismiss is reviewed under the standard that the Court must accept all the well-pleaded allegations contained in the complaint as true, resolve all doubts in Plaintiff's favor, and construe the complaint liberally in favor of the *pro se* Plaintiff. *Kottmyer v. Maas*, 436 F.3d 684 (6th Cir. 2006); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11-12 (6th Cir. 1987). However, the plaintiff's factual allegations must be enough to show a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-61 (2007). The complaint must contain either direct or inferential factual allegations

---

[5] Defendants do not indicate whether they are pursuing a facial or factual attack on subject matter jurisdiction. However, because they do not present evidence in support of their motion or rely on evidence in the record, the Court views their Rule 12(b)(1) attack as raising a facial attack.

that are sufficient to sustain a recovery under some viable legal theory. *Id.*; *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988). To state a plausible claim for relief, the alleged facts must provide "more than a sheer possibility that a defendant has acted unlawfully." *Mik v. Federal Home Loan Mortg. Corp.*, 743 F.3d 149, 157 (6th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A court may appropriately take judicial notice of other court proceedings without converting a motion to dismiss into one for summary judgment. *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010).

## V. ANALYSIS

The Court has reviewed the parties' filings at length. Although Plaintiff is proceeding *pro se*, his filings clearly indicate that he has more than an average layman's knowledge of the law and of the subject material. Nonetheless, his ability to fill the pages of his filings with argument and relevant law does not equate to having a viable lawsuit. The Court finds that the motion to dismiss filed by Defendants is well taken and that this lawsuit is appropriately dismissed as to all claims and Defendants.

### A. Venue and *Res Judicata*

As an initial matter, the Court is not swayed by Defendants' arguments that the lawsuit should be dismissed because of improper venue and *res judicata*. To be sure, Plaintiff continues to mingle into this lawsuit allegations and arguments that arise out of or are related to the claims and issues of the Kentucky foreclosure that have been extensively litigated and found against Plaintiff in other federal lawsuits. He also devotes several pages of his response to arguments that appear to be directed at a desire to revive claims related to the Kentucky foreclosure and the underlying loans. (Docket Entry No. 69 at 2-4 and 7-13.)

However, these arguments are misplaced and fruitless given the clear directives from the Court in Plaintiff's prior cases in this District that claims related to or arising out of the Kentucky foreclosure will not be litigated in this District.[6] Nonetheless, despite Plaintiff's misplaced arguments, the FAC does not actually attempt to re-litigate these claims and/or seek relief from the foreclosure. If it did, then Defendants' venue and *res judicata* arguments would have merit. However, the FAC involves denied farm loans for property in Rutherford County, Tennessee, which is located within the boundaries of this District, and is also based upon events and actions taken by Defendants that have only recently occurred and that could not have been litigated in Plaintiff's prior lawsuits. For these reasons, dismissal based on improper venue or *res judicata* is not warranted.

## B. Article III Standing

Defendants raise their lack of subject matter jurisdiction argument in the stance of a standing argument because the absence of standing deprives the Court of subject matter jurisdiction, *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012), and not as a challenge to the Court's exercise of federal question jurisdiction over this case, which clearly exists. "The threshold question in every federal case is whether the court has the judicial power to entertain the suit." *Nat'l Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

---

[6] Indeed, the Court notes that, in a recent order entered in *Lea, et al v. United States Dep't of Agric., et al.*, 3:21-cv-00468 (M.D. Tenn. 2021), the Court enjoined Plaintiff from "filing any new matters in the United States District Court for the Middle District of Tennessee against any defendant related to the 2009 foreclosure of his farm property in Warren County, Kentucky" without first complying with pre-filing procedures and a screening to" determine whether the proposed complaint raises claims that are harassing, vexatious, or duplicative of his prior dismissed lawsuits." *See* Order entered August 1, 2024 (Docket Entry No. 260), in Case 3:21-cv-00468.

Article III of the United States Constitution prescribes that federal courts may exercise jurisdiction only where an actual "case" or "controversy" exists. U.S. Const. Art. III, § 2. The case or controversy requirement allows federal courts to deliver judgments on real disputes, not hypothetical ones, and to resolve concrete disputes, not to pronounce judgments on theoretical disputes that may or may not materialize and, if they do, may appear in a variety of forms. *Saginaw Cnty., Michigan v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020). )). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). The component of standing is an "essential and unchanging part" of the case and controversy requirement, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and the party seeking to invoke the federal court's jurisdiction must establish the necessary standing to sue before the court may consider the merits of that party's cause of action. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990).

To establish standing under the Constitution, a plaintiff must show that: (1) he has suffered an "injury in fact" that is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *Gaylor v. Hamilton Crossing CMBS*, 582 F.App'x 576, 579–80 (6th Cir. 2014) (citing *Lujan*, 504 U.S. at 560–61); *see also Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). These constitutional requirements – commonly known as (1) injury-in-fact, (2) causation, and (3) redressability – apply in every case.

The Court finds that Plaintiff's lawsuit suffers from significant deficiencies with respect to standing. Regarding Plaintiff's complaints about Defendants' implementation of the financial

13

Case 3:23-cv-00340    Document 81    Filed 02/10/25    Page 13 of 20 PageID #: 1066

relief provision of Sections 1006(e) and 2007, his allegations of racial discrimination, and his arguments about the legality of the USDA's rules and procedures, the Court finds a dearth of factual allegations in the FAC that show that Plaintiff has suffered an actual injury in fact that would confer standing as to these claims. Plaintiff's allegations about what has happened to generic "Black farmers" and how they have been mistreated do not show a concrete and particularized injury to him. Further, these allegations are largely based on conjecture and speculation, which will not support a finding of constitutional standing. *Sumpter v. Wayne Cty.*, 868 F.3d 473, 491 (6th Cir. 2017).

Plaintiff's assertion of possible future injuries likewise fails to show that he is subject to the type of threatened or future injury that is real, immediate, and certain, which is necessary to show standing for the type of declaratory relief that he requests. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Crawford v. U.S. Dep't of the Treasury*, 868 F.3d 438, 454 (6th Cir. 2017). A plaintiff cannot bring a lawsuit "simply to avoid a possible future injury," *Saginaw County*, 946 F.3d at 954-55 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)) (cleaned up), and the "mere risk of future harm" is not an injury sufficient to establish standing. *Safety Specialty Ins. Co.*, 53 F.4th at 1020 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021)).

Additionally, a claim is considered moot and therefore no longer a live "case" or "controversy" "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Both Plaintiff's response and Defendants' reply indicate that Plaintiff has now been provided with full debt relief and his debts are no longer a bar to eligibility for additional farm loans. *See* Response (Docked Entry No. 69) at 17; Reply (Docket Entry No. 70) at 2. In other words, events that have

occurred during the course of the proceedings in this case appear to have mooted any claim by Plaintiff that the Section 22006 debt relief he received will injury his ability to obtain future farm loans.

Because Article III standing is an issue implicating the Court's subject matter jurisdiction over a case, it may be addressed by the Court at any time. Fed. R. Civ. P. 12(h)(3); *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002). It is therefore appropriate for the Court to address whether Plaintiff has shown standing in the case with respect the three private entities that are named as Defendants – Windsor Group, LLC, The Midtown Group, and Analytic Acquisitions. The Court finds that Plaintiff's FAC lacks factual allegations showing that he has been injured in any manner by these private entities or that he has otherwise suffered an injury because of any action by them. Accordingly, Plaintiff's complaints about the alleged delegation by the USDA of any duties or roles to them fails to show that he has standing to pursue any type of claim against them. Although these three Defendants are not part of the motion to dismiss, the Court finds that their dismissal is required because of a lack of standing for any claims against them. *Jones v. Glad Music Publ'g & Recording LP*, 535 F.Supp.3d 723, 726 (M.D. Tenn. 2021) (dismissing claims against non-moving defendants because of a lack of subject matter jurisdiction over the claims brought against them).

### C. Failure to State Claim for Relief

Assuming that Plaintiff can survive the standing hurdle with respect to his first theory of wrongdoing and claims that are based upon factual allegations of specific events that occurred with respect to him, the Court finds that he fails to show a plausible entitlement to relief that is sufficient to state a claim for relief. The bulk of Plaintiff's claims are premised upon his theory that the moratorium provision of 7 U.S.C. § 1981a(b) should have prevented the USDA from providing

15

him with him debt relief under Section 22006 because his discrimination complaint #08-1401 with the USDA had never been resolved. Section 1981a(b), titled "Moratorium," provides:

> (1) In general
>
> > Subject to the other provisions of this subsection, effective beginning on the date of the enactment of this subsection, there shall be in effect a moratorium, with respect to farmer program loans made under subchapter I, II, or III, on all acceleration and foreclosure proceedings instituted by the Department of Agriculture against any farmer or rancher who--
> > (A) has pending against the Department a claim of program discrimination that is accepted by the Department as valid; or
> > (B) files a claim of program discrimination that is accepted by the Department as valid.
>
> (2) Waiver of interest and offsets
>
> > During the period of the moratorium, the Secretary shall waive the accrual of interest and offsets on all farmer program loans made under subchapter I, II, or III for which loan acceleration or foreclosure proceedings have been suspended under paragraph (1).
>
> (3) Termination of moratorium
>
> > The moratorium shall terminate with respect to a claim of discrimination by a farmer or rancher on the earlier of--
> > (A) the date the Secretary resolves the claim; or
> > (B) if the farmer or rancher appeals the decision of the Secretary on the claim to a court of competent jurisdiction, the date that the court renders a final decision on the claim.

7 U.S.C. § 1981a(b).

Assuming for present purposes that the loans for which debt relief was provided to Plaintiff are loans that are covered by Section 1981a(b)(1), Plaintiff's factual assertion that complaint #08-1401 has never been resolved appears to the Court to be incorrect at best. Filings made by Plaintiff in one of his prior cases in this Court show that a Final Agency Decision was made by the USDA's Office of the Assistant Secretary for Civil Rights dismissing complaint #08-1401 on

March 25, 2010. *See* Docket Entry No. 95-27 in *Lea, et al. v. Sec'y of Agric., et al.,* 3:21-cv-00468 (M.D. Tenn 2021). Under Section 1981a(b)(3), any moratorium that would have existed because of the pendency of this discrimination complaint would have been terminated when the Secretary resolved the complaint on March 25, 2010. There is simply no viable legal claim that can be based in any way upon Plaintiff's assertion that the Section 22006 debt relief was barred by a moratorium under Section 1981a(b). Plaintiff appears to argue that, even absent a moratorium, the USDA somehow acted unlawfully by providing him with several hundred thousand dollars of financial debt relief under Section 22006; relief that eventually extinguished the loan obligations. It escapes the Court how providing this debt relief to Plaintiff creates the basis for a legal claim that entitles him to additional relief.

The Court finds that Plaintiff fails to state a claim for relief based on his allegations of racial discrimination, a conspiracy against him, or retaliation. Plaintiff's factual allegations about such claims are entirely conclusory. He has not set forth any specific factual allegations of actions taken against him that would support claims for relief under any of these theories.

The Court finds that, although Plaintiff fills his FAC with references to violations of the APA, he fails to set forth a viable claim that he is entitled to legal relief under the APA. To the extent that Plaintiff complains that he was denied an avenue to appeal the adverse decisions on the two farm loan applications in Rutherford County, he has not shown that he attempted to pursue the appeal rights set out in 7 C.F.R. § 780.6. To the extent that he complains that the provision of debt relief to him under Section 22006 was a final agency action that triggered his right to a hearing or appeal under the APA, he has not persuasively shown how this financial debt relief was an adverse action by the USDA that aggrieved him or caused him a legal wrong. Finally, Plaintiff complains about decisions made by the Secretary about how to implement and award financial

assistance under Section 22006. However, Section 22006 provides that the Secretary shall carry out and provide relief to borrowers under Section 22006 "as determined by the Secretary." Accordingly, the decisions complained about appear to be committed to the discretion of the agency and therefore do not fall within the purview of review under the APA. *See* 5 U.S.C. § 701(a).

Finally, Plaintiff argues that Defendants conceded additional claims for relief that were included in the motion for further relief (Docket Entry No. 39) that was conditionally granted by the Court's February 12, 2024 Order. Plaintiff's argument is meritless. First, Defendants have not conceded any claims in their motion to dismiss. Second, and more importantly, the Court conditionally granted Plaintiff's motion only to the extent that it, and other motions filed by him, were construed as requests by him to amend his original complaint. (Docket Entry No. 42 at 1 and 3-4.) The proposed claims in the motion were not incorporated into this case by the Court's Order.

Indeed, the Court's explicit instruction to Plaintiff in that Order was for Plaintiff to file a single pleading that clarifies his case, "a comprehensive, amended complaint that encompasses the entirety of his allegations and that clearly and distinctly sets out his claims." (*Id*. at 4.) The FAC that he subsequently filed is the legally operative complaint in this case and sets out the only claims that are at issue in this matter. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). Proposed claims that were a part of prior filings made by Plaintiff are not a part of this case.

### IV. PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

Also currently pending before the Court is Plaintiff's motion for a temporary injunction to enjoin Defendants from taking enforcement actions against the loan debts that remained after the

18

Case 3:23-cv-00340   Document 81   Filed 02/10/25   Page 18 of 20 PageID #: 1071

initial financial debt relief under Section 22006 was provided to him in October 2022. (Docket Entry No. 52.)

Denial of this motion is warranted for three reasons. First, the motion has become moot because, as noted herein, Plaintiff has been provided with additional financial debt relief under Section 22006 that has extinguished the loan debt. Second, Plaintiff's motion does not indicate that any actual enforcement action has been taken against him by Defendants or that he is under any real and imminent threat of such action. For that reason, there does not appear to be a need for the injunctive relief that he requests. Third, the Court has determined that Defendants' motion to dismiss is meritorious and that this action is properly dismissed. Plaintiff cannot therefore show that he has a chance of success on the merits of his case, much less a likelihood of success, which is a necessary showing for the grant of any preliminary injunction.

## V. MOTION FOR DEFAULT

Plaintiff has filed a motion for entry of default against Windsor Group, LLC, and The Midtown Group. (Docket Entry No. 74.) As set out herein, the Court finds that Plaintiff does not have standing to pursue claims against these Defendants. Accordingly, the motion for default against them is moot.

## RECOMMENDATION

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1. The motion to dismiss (Docket Entry No. 61) filed by Defendants Secretary of Agriculture and the United States Department of Agriculture be **GRANTED**.

2. Defendants Windsor Group, LLC, The Midtown Group, and Analytic Acquisitions be **DISMISSED** from this action for want of subject matter jurisdiction due to Plaintiff's lack of standing.

3. Plaintiff's motion for a temporary preliminary injunction (Docket Entry No. 52) be **DENIED**.

4. Plaintiff's motion for entry of default against Windsor Group, LLC, and The Midtown Group (Docket Entry No. 74) be **DENIED**.

5. This action be **DISMISSED** in its entirety and final judgment entered.

**ANY OBJECTIONS** to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge

20

Case 3:23-cv-00340 Document 81 Filed 02/10/25 Page 20 of 20 PageID #: 1073