## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

FILED
2025 FEB 20 AM 10: 21

**COREY LEA, pro se**

      **Plaintiffs,**

**v.**

**THE SECRETARY OF AGRICULTURE,**
**BROOKE ROLLINS,**
**THE UNITED STATES DEPARTMENT OF**
**DEPT. OF AGRICULTURE**
**THE WINDSOR GROUP, LLC**
**THE MIDTOWN GROUP**
**ANALYTIC AQUISTION**
**FIRST BANK   AKA FB FINANCIAL Corp.**
    **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**No. 3:23-cv-00340**
**Judge Trauger / Holmes**

## SECOND AMENDED VERIFIED COMPLAINT
## AND REQUEST OF DECLARATORY JUDGMENT

## JURISDICTION AND VENUE

This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this case concerns whether the Department and its officials acted in compliance with the Administrative Procedure Act and other federal laws.

This Court has federal-question jurisdiction under 28 U.S.C. § 1332 because this case concerns Defendants from more than one state.

1

This Court has jurisdiction under 28 U.S.C. § 1346 because this case involves a claim against agencies and employees of the federal government.

This Court has jurisdiction under 28 U.S.C. § 1361 because the Court has jurisdiction over any case "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because (1) Plaintiff Tennessee resides in this District; (2) Tennessee's agencies and employees subject to the agency actions at issue reside in the District; and (3) "a substantial part of the events or omissions giving rise to Plaintiff's claim occurred" in this District.

This Court has the authority to grant Plaintiffs the relief they request under the Administrative Procedure Act, 5 U.S.C. §§ 705-06; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02; and 28 U.S.C. § 1361.

## PARTIES

Plaintiff, Corey Lea, is a resident of the State of Tennessee, and resides within the jurisdiction of this Court.

Defendant, United States Department of Agriculture, is domiciled in at 1400 Independence Ave. SW, Washington, DC 20250.

Defendant Brooke Rollins, is domiciled at 1400 Independence Ave. SW, Washington, DC 20250.

2

Defendant, Windsor Group, LLC, is domiciled at 6710A Rockledge Dr Ste. 400 Bethesda, Maryland 20817.

Defendant, The Midtown Group, is domiciled at 1130 Connecticut Ave NW #450Washington, DC 20036.

Defendant, Analytic Acquisitions, is domiciled at 8300 Hartford Ave. Silver Spring, Maryland 20910-5308.

Defendant First Bank is domiciled at 722 Columbia Ave., Franklin , Tennessee 37064 and can be serve to CT Corporation System 300 MONTVUE RD KNOXVILLE TN, 37919-5546

## BACKGROUND

Corey Lea ("Plaintiff") is a Black "rancher and entrepreneur" who resides in Murfreesboro, Tennessee. In April 2023, he filed this pro se lawsuit against Thomas Vilsack, Secretary of Agriculture ("Vilsack"), and the United States Department of Agriculture ("USDA"), raising five claims and seeking various forms of declaratory and injunctive relief based on alleged racial discrimination by Vilsack and the USDA in administering federal financial assistance and other programs. See Complaint (Docket Entry No. 1). Plaintiff asserts that he brings his lawsuit "to challenge a law that distributes benefits and burdens on the basis of race in violation of the Equal Protection Component of the Due Process Clause of the Fifth Amendment to the Constitution." Id. at 3. Specifically, he complains about the manner in which the USDA has resolved administrative claims and civil rights complaints brought by Black farmers and about the manner in which the USDA and Vilsack have administered and implemented Section 1006 of the American Rescue Plan Act ("ARPA"), Pub. L. No. 117-2, 135 Stat. 4 (2021), and Sections 22006 and 22007(e) of the Inflation Reduction Act ("IRA"), Pub. L. 117-169, 136 Stat. 1818 (2022).

3

It has been discovered that the Federal Defendants have sent a check in the name of the Plaintiff and the guaranteed lender and possibly its agent, Larry Hinton, pursuant section 22006 of the Inflation Reduction Act. First Bank is headquartered in Nashville, Tennessee and the wrongdoer is further within the jurisdiction of this Court. This Court has routinely held in *ND Acquisitions Corp. v. Bel Pre Leasing Co.*, NO. 3-15-0796, 4 (M.D. Tenn. Sep. 10, 2015) ("Purposeful availment is present where the defendant's contacts with the forum state proximately result from actions by the defendant itself that create a substantial connection with the forum state and where the defendant's conduct and connection are such that it should reasonably anticipate being haled into court in the forum state. *Beydoun*, 768 F.3d at 505-06. The emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state. *Id*. at 506.")

Again, see *ND Acquisitions Corp. v. Bel Pre Leasing Co.*, NO. 3-15-0796, 4 (M.D. Tenn. Sep. 10, 2015) ("With respect to interstate contractual obligations, the Supreme Court has emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities. *Burger King Corp. v. Rudzeqicz*, 105 S.Ct. 21174, 2182 (1985); *Vireo Systems*, 2015 WL 1893461 at * 6. Where a defendant has created continuing obligations between itself and the residents of another forum, it manifestly has availed itself of the privilege of conducting business there. *Air Products and Controls*, 503 F.3d at 551.")

## FACTUAL ALLEGATIONS

Section 22006 of the Inflation Reduction Act of 2022 In addition to amounts  otherwise available, there is appropriated to the Secretary for fiscal year  2022, out of amounts in the Treasury not otherwise appropriated,  $3,100,000,000, to remain available until September

4

30, 2031, to provide payments to, for the cost of loans or loan modifications for, or to carry

out section 331(b)(4) of the Consolidated Farm and Rural Development Act (7 U.S.C.

1981(b)(4)) with respect to distressed borrowers of direct or guaranteed loans administered

by the Farm Service Agency under subtitle A, B, or C of that Act (7 U.S.C. 1922 through

1970). In carrying out this section, the Secretary shall provide relief to those borrowers

whose agricultural operations are at financial risk as expeditiously as possible,

as determined by the Secretary.

1. On October 18, 2022, Defendant Vilsack applied pandemic relief and reportable income in

the amount of $228,083.86 to a direct loan. The Plaintiff is liable for the remaining alleged debt

of approximately $19,500 in total. The alleged debt is from the balance of the Direct Loan and a

Guaranteed Loan that the Defendant did not enforce with a private bank.

2. The debt payoff on October 18, 2022, constituted a loss to the agency per regulation 7

CFR.101(d)(2).

3. Per agency rules and regulation 7 CFR 101(d)(3) a history of failures to repay past

debts as they came due when the ability to repay was within the applicant's control will

demonstrate unacceptable credit history.

4. Per agency regulations 7 CFR 764.101(f) As provided in 31 CFR Part 285, except for

EM loan applicants, the applicant and anyone who will sign the Promissory Note must not be

in delinquent status on any Federal debt, other than a debt under the Internal Revenue Code

1986 at the time of the loan closing. All delinquent debts, however, will be considered in

determining credit history and ability to pay under this part.

5. Per agency rules and regulations 7 C.F.R. §§ 15.8(c); 10(f); 10(g); Subpart C

specifically allow applicants or recipients to request a hearing before OALJ if the applicant or

recipient is adversely affected by an Order of the Secretary suspending, terminating, or refusing to continue Federal financial assistance; and the Secretary subsequently denies a request to restore eligibility for the assistance. 35. The debt written off on October 18, 2022, is a final agency action and the termination of federal assistance and the Plaintiff was adversely affected by the Order of the Secretary to write down the Direct Loan.

6. The Plaintiff requested a hearing before the Administrative Law Judge for the adverse action and the ALJ refused to docket the complaint or set a hearing in November of 2022.

7. In March of 2023, the Plaintiff applied for farm ownership and farm operating loan for land located in Rutherford County, Tennessee. The loans were denied stating that the Plaintiff already had an existing farm loan in Kentucky.

8. Farmers and ranchers can apply for Section 22006 of the Inflation Reduction Act, which will give out loans to those who need them for their farms. "We have to be flexible in terms of making sure that we're helping folks stay in business and increase the financial viability of their farm," said Senior Advisor at the USDA Scott Marlow. (Ex. 3 Article posted Feb.16, 2024)

9. "These loans can be used for farm purchases, equipment purchases, operating expenses, which can be Z Chemical fertilizer to pay rent, but we do finance equipment and livestock and those type things that could be turned out longer," said Farm Loan Chief for Georgia Charles Tyson Jr.

https://www.walb.com/2024/02/17/usda-give-out-loans-discrimination-against farmers-other-farm-tools/

6

10. The Discrimination Financial Assistance Program is a new program, authorized by Section 22007(e) of the Inflation Reduction Act, that will provide financial assistance to farmers, ranchers and forest landowners who experienced discrimination in USDA farm lending programs prior to 2021. https://www.nrcs.usda.gov/conservation-basics/conservation-by-state/south dakota/news/inflation-reduction-act-section-22007

11. The Plaintiff filed another request for a hearing before the ALJ and once again the Office of Administrative Law Judges refused to docket the case. This time the request was for Packers and Stockyard Enforcement and adverse decision based on the Defendant Vilsack's order terminating my financial assistance.

12. In January of 2024, the Plaintiff applied for farm ownership and farm operating loan in Rutherford County, Tennessee. The Plaintiff filed a complaint with the Office for Civil Rights, USDA Complaint Number: 2024-01-00015519.

13. The denial letter for the farm ownership and farm operating loan states that there is a delinquent amount of a guaranteed loan for $13,599.42 from January 20, 2015 and a current delinquent amount of $10,908 on FSA Direct Loan.

**CORONAVIRUS FOOD ASSISTANCE PROGRAM (CFAP)**

14. Nearly 100 percent of all Coronavirus pandemic relief went to White farmers, which included direct deposit to White farmers banking accounts.

15. On May 26, 2020, the Defendants announced that the agency had already approved more than 545 million in payments to producers who already applied. The agency also announced that the payments were made within six days of the announcement of the program which ran through August of the same year. The program was allocated 16 billion and went to 86,000 White farmers.

7

16. White farmers were also give more pandemic assistance in March of 2021 and direct deposits were made within 40 days of the announcement. "CFAP 3 (now called "pandemic assistance for producers" or PAP) payments to crop producers — Producers of both "price trigger" crops and "flat rate crops" that were produced in 2020 will receive an additional $20 per acre CFAP 3 payment. The CFAP 3 payments were originally authorized by the COVID relief bill passed by Congress late in 2020. The "price trigger" crops include corn, soybeans, wheat, barley, sorghum, sunflowers, and upland cotton, with payment eligibility based on the same criteria that was used for the 2020 CFAP 2 payments. The "flat rate crops" include most crops not covered under the "price trigger" category, including sugar beets, sweet corn, and peas, as well as more than 230 fruit, vegetable, and other horticulture crops. Producers will not need to re-apply for the CFAP 3 crop payments, as FSA will use the same criteria for these payments that was used for 2020 CFAP 2 payments. It is expected that FSA will issue the CFAP 3 crop payments in early April through direct deposit. https://www.minnstarbank.com/2021/04/01/usda-provides-some-clarity-on-cfap payments/

**D. The USDA's Unlawful Actions**

17. Because the Defendants have not resolved the pending discrimination complaints, pursuant the Administrative Procedures Act, of the Plaintiff and other similar situated Black farmers to arbitrarily apply relief to accounts under moratorium.

18. The Defendants applied interest toward the loans which the Plaintiff will have to pay taxes on. Moreover, the moratorium or 7 CFR 766.358 plainly states that interest shall not accrue until the discrimination complaint is resolved.

8

19. The APA is designed to return the complainant back to the position where he started. In this case, the Defendants need to replace 72 acres of farm and 16 years of economic damages.

20. The Defendant had the opportunity resolve the discrimination complaints through section 1006 of the American Rescue Plan Act of 2021 but chose not to because the Plaintiff is Black and there was no cap on economic damages.

21. The Defendants devised a scheme to limit the amount of land that can be purchased after the Plaintiff filed a discrimination complaint. In addition, the Defendants made rules that the Plaintiff could not get a farm ownership loan if the applicant had not purchased a farm within 10 years of the last closing. If it was not for the unlawful actions and failure to enforce by the Defendants and unreasonably delay of resolving the discrimination complaint of the Plaintiff, the Plaintiff and other similar situated Black farmer could have purchased more land within 10 years and could have been eligible for pandemic relief.

22. The Defendants violated equal protection of the laws by direct depositing pandemic relief to White farmers and issuing checks to Black farmers that carry risks of theft and bank delay, if ever received.

## PRIVATE NONDELEGATION DOCTRINE

23. The nondelegation doctrines broadly refer to judicially imposed limits on Congress's ability to constitutionally delegate authority to others. Specifically, Congress cannot delegate its legislative authority to an executive agency unless the statute contains an "intelligible principle" guiding the agency. See Gundy v. United States, — U.S. —, 139 S. Ct. 2116, 2123, 204 L.Ed.2d 522 (2019) (plurality opinion); see also Mistretta v. United States, 488 U.S. 361, 372, 109 S.Ct.

9

647, 102 L.Ed.2d 714 (1989). This is the public nondelegation doctrine. The private nondelegation doctrine refers to constitutional concerns that arise where a private entity—rather than a government entity—wields significant power to execute a statutory scheme. See Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936).

24. State v. United States, 62 F.4th 221, 237-38 (6th Cir. 2023) ("The private nondelegation doctrine is rooted in both due process and separation of powers concerns. Indeed, the earliest invocations of the private nondelegation doctrine arose in the context of local regulations. See Washington ex rel. Seattle Title Tr. Co. v. Roberge, 278 U.S. 116, 121-22, 49 S.Ct. 50, 73 L.Ed. 210 (1928); Thomas Cusack Co. v. City of Chicago, 242 U.S. 526, 530, 37 S.Ct. 190, 61 L.Ed. 472 (1917); Eubank v. City of Richmond, 226 U.S. 137, 143-44, 33 S.Ct. 76, 57 L.Ed. 156 (1912). In these cases, localities granted private homeowners the power to create zoning laws for their neighborhood, and the Supreme Court found these ordinances violated property owners' federal due process rights. Eubank, 226 U.S. at 143-44, 33 S.Ct. 76. "The Court was concerned that private property owners, with their own interests at stake, had been given total, standardless control over an important aspect of their neighbors' property." Rice v. Vill. of Johnstown, 30 F.4th 584, 589 (6th Cir. 2022) (citing Eubank, 226 U.S. at 143, 33 S.Ct. 76).")

25. State v. United States, 62 F.4th 221, 238 (6th Cir. 2023) ("Notably, in its federal private nondelegation cases, the Supreme Court has blurred the lines between the two rationales, opting not to definitively root the private nondelegation doctrine in one or the other, and often referring to both. For instance, in Carter v. Carter Coal, the first case applying the private nondelegation doctrine to a federal statute, the Court ruled that a portion of the Bituminous Coal Conservation Act of 1935 was unconstitutional under the private nondelegation doctrine.

298 U.S. at 311, 56 S.Ct. 855. In invalidating the statute, the Court found the delegation at issue "so clearly arbitrary, and so clearly a denial of rights safeguarded by the due process clause of the Fifth Amendment, that it is unnecessary to do more than refer to decisions of this court which foreclose the question." Id. at 311-12, 56 S.Ct. 855 (first citing Schechter Poultry Corp. v. United States, 295 U.S. 495, 537, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); then citing Eubank, 226 U.S. at 143, 33 S.Ct. 76; and then citing Roberge, 278 U.S. at 121-22, 49 S.Ct. 50).")

26. State v. United States, 62 F.4th 221, 238-39 (6th Cir. 2023) ("The Fifth Circuit, when it ruled recently on the original version of the Act, recognized this ambiguity. See Nat'l Horsemen's Benevolent & Protective Ass'n v. Black, 53 F.4th 869, 881 n.23 (5th Cir. 2022). "Courts and commentators," it wrote, "differ over the locus of the constitutional violation." Id. (citing several articles and cases). Compare U.S. Dep't of Transp. v. Ass'n of Am. R.R.s, 575 U.S. 43, 46, 135 S.Ct. 1225, 191 L.Ed.2d 153 (2014) ("This argument [regarding private nondelegation] rests on the Fifth Amendment Due Process Clause and the constitutional provisions regarding separation of powers."), with id. at 87-88, 135 S.Ct. 1225 ("[O]ur so-called 'private nondelegation doctrine' flows logically from the three Vesting Clauses.") (Thomas, J., concurring). But the Fifth Circuit concluded it "need not weigh in" to resolve the question at hand. Black, 53 F.4th at 881 n.23. "Whatever the constitutional derivation, all parties and the district court agree that the outcome turns on whether the private entity is subordinate to the agency." Id.; see also Ass'n of Am. R.R.s v. U.S. Dep't of Transp. (Amtrak I), 721 F.3d 666, 671 n.3 (D.C. Cir. 2013), vacated on other grounds, 575 U.S. 43, 135 S.Ct. 1225, 191 L.Ed.2d 153 (2015) ("While the distinction [between the due process clause and Vesting Clauses] evokes scholarly interest, . . . our own precedent

describes the problem as one of unconstitutional delegation."). When presented with the same ambiguity, the D.C. Circuit also did not decide the issue because the doctrine turns on unconstitutional delegation, regardless of its textual roots, and "neither court nor scholar has suggested a change in the label would effect a change in the inquiry." Amtrak I, <u>721 F.3d at 671</u> n.3.")

# CAUSES OF ACTION

## COUNT ONE

### <u>Equal Credit Opportunity Act</u>

27. Plaintiff Corey Lea is Black and a member of a protective class. In addition, the Plaintiff is further defined as a member of protected class or the definition of a Socially Disadvantaged Farmer or Rancher as defined by the Defendants- a socially disadvantaged farmer or rancher (SDFR) refers to a farmer or rancher who is a member of a group whose members have been subjected to racial or ethnic discrimination (7 U.S.C. §2279).

28. In March of 2023 and January 2024, I applied for land ownership loans to buy a new farm in Rutherford County, Tennessee. In the first instance, the FSA employee asked the Plaintiff if he was planning to expand his cattle operation. Puzzled by the response, the Plaintiff asked what operation was she talking about expanding?

29. The employee stated that I owed the Defendants $175,000 from a previous direct loan. The Plaint responded that in October of 2022, the Plaintiff wrote that loan off through

provisions of section 22006 of the Inflation Reduction Act. The employee responded that it still shows that none of the payments are reflected on the account.

30. In the same conversation, the Plaintiff asked the FSA employee about the grants and other programs available for Black farmers that have suffered discrimination that is looking to get back into business. The employee responded that there are no programs available to Black farmers who have suffered discrimination in the past that have been sent to the state levels.

31. The Plaintiff then called Dewayne Goldmon, head of the USDA's Equity Commission and asked about the programs found in section 1006 of the American Rescue Plan Act of 2021. Mr. Golmon reiterated that the Plaintiff could apply for ownership assistance under the Inflation Reduction Act, but the actual language is found under section 1006 of the American Rescue Plan Act.

32. a. A pattern or practice of resistance to the full enjoyment of rights secured by the Department of Agriculture through section 1006 of the American Rescue Plan Act; and b. A denial of rights granted by the Department of Agriculture to a group of persons that raises an issue of general importance.

33. The Department of Agriculture's pattern or practice of discrimination was intentional and willful and was implemented with reckless disregard for the rights of individuals based on their race, color, and national origin.

34. This Federal Defendant has conceded that Plaintiff Lea was eligible for the two land purchases and grants for a meat processing facility after the loans in question were paid under section 22006 of the Inflation Reduction Act. The Loans for the land purchases were for farm ownership loans and farm operating loans on both occasions.

13

35. Defendants Winsdor Group, LLC, The Midtown Group, and Analytic Acquisition, hereinafter known as the "hubs," violated ECOA by denying entities owned wholly owned by the Plaintiff because of his color, which is Black. The Plaintiff did receive an award under 22007 of the Inflation Reduction Act.

36. Plaintiff Lea submitted approximately 9 different entities in which he was the third party beneficiary as an individual. The hubs recognized third-party beneficiaries since the check received was in the individual name of the Plaintiff.

37. The Plaintiff submitted the 40-page applications around the first week of January of 2024 and received a check from the United States Treasury around August 4, 2024.

38. The Hubs and the Federal Defendants availed itself to the jurisdiction of this court through purposeful availment by taking the applications for section 22007 of the Inflation Reduction Act through a website, see *Bridgeport Music, Inc. v. DM Records, Inc.*, NO. 3:01-0730, (M.D. Tenn. Jan. 29, 2002) ("The "purposeful availment" requirement is "the *sine qua non of in personam* jurisdiction." Mohasco Indus., 401 F.2d at 381-82. It is satisfied "when the defendant's contacts with the forum state 'proximately result from actions by the defendant himself that create a "substantial connection" with the forum State,' and when the defendant's conduct and connection with the forum are such that he 'should reasonably anticipate being hauled into court there.'" CompuServe, Inc., 89 F.3d at 1263 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-74, 105 S.Ct. 2174, 2183-84, 85 L.Ed.2d 528 (1985)).")

39. The Hubs were indeed agents of the Department of Agriculture in two ways. First it used an official federal government website to accept application www.22007apply.gov, which has now been taken down by DEI claw backs by the 47th President of the U.S.. Monica Rainge who was a high ranking official at the Office for Civil Rights, stated ""The application period is currently closed now, and we are in the process of reviewing and evaluating those

14

applications," Rainge said. -see https://www.walb.com/2024/02/17/usda-give-out-loans-discrimination-against-farmers-other-farm-tools/

40. Defendant First Bank received a check(s) in the name of the guaranteed lender and the Plaintiff between October of 2022 and October of 2024 for money from the Federal Defendants that is not owed to them to further discriminate against the Plaintiff due to his race and color, Black.

41. ECOA applies to any part of a credit transaction in which the Plaintiff and Defendant First Bank had a first mortgage that was foreclosed on. Defendant First Bank refinanced the loan into the name of the Plaintiff in his individual capacity and in the name of his corporation. Both the Plaintiff and Defendant USDA guaranteed the loan. See *Robinson v. Maxwell Fed. Credit Union*, Case No. 2:14-cv-601, 4 (S.D. Ohio Jan. 22, 2015) ("The ECOA states, in pertinent part: "It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age. . . ." 15 U.S.C. § 1691(a)(1).")

42. The loan guaranteed signed by the Plaintiff in his individual capacity carries a waiver of jurisdiction. It allows the Plaintiff to bring suit where the Plaintiff resides. Nonetheless, the last ECOA Violation is subject to the "continuing violations doctrine." See *ND Acquisitions Corp. v. Bel Pre Leasing Co.*, NO. 3-15-0796, 5 (M.D. Tenn. Sep. 10, 2015) ("Plaintiff's causes of action are based exclusively on Defendants' alleged breaches of their contracts with Plaintiff. Tennessee has a substantial interest in seeing that its residents get the benefit of their bargains. ")

43. At no time did the Federal Defendants or Defendant First Bank inform the Plaintiff that a check had been issued to First Bank or its agent with the Plaintiff's name on the check

15

for another charge on the Plaintiff's account. The actions described amount to wrongful fraudulent concealment by First Bank and the Federal Defendants.

44. Ironically, after the cancellation of debt, the Federal Defendants sent the other contracts marked "paid in full" but failed to send the completion of their guarantee with Defendant First Bank marked "paid in full." This gives rise to the other $150,000 or so that is unaccounted for from the total eligibility of pandemic relief afforded to the Plaintiff.

45. The Plaintiff is entitled to relief;

**Discouragement of Prospective Application**

46. Plaintiff Restates and Realleges 1-45.

47. The Federal Defendants have a long-admitted practice and pattern of discriminating against Black farmers and ranchers, such as the Plaintiff, see *Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1280 (M.D. Fla. 2021) ("The Government also contends SDFRs received a disproportionately low proportion of pandemic relief assistance authorized in prior legislation, thereby suggesting it remains a passive participant in discrimination. Response at 9-10. Specifically, the Government cites to two statistics related to recent USDA programs that have disproportionately benefited White farmers. The first statistic shows 99.4% of relief under USDA's Market Facilitation Program (MFP) went to White farmers. Response at 10 (citing N. Rosenberg, USDA Gave Almost 100 Percent of Trump's Trade War Bailout to White Farmers, Farm Bill Law Enterprise (July 24, 2019)). The second statistic shows 97% of the $9.2 billion in pandemic relief provided through USDA's Coronavirus Food Assistance Program in 2020 went to nonminority farmers. Stabenow Floor Statement at 1264 (citing J. Hayes, USDA Data: Nearly all Pandemic Bailout Funds Went to White Farmers, Envir'l Working Group (Feb. 18, 2021)).")

16

48. The Federal Defendants went as far making an applicant for the Food Diversity Grant ineligible if he had a pending complaint lodged at the USDA. The Plaintiff has lodged scores of complaints at the Office of Civil Rights that were improperly closed without knowledge of the Plaintiff and a complaint lodge with only 3 of the 4 accepted issues resolved, making that complaint active or still pending. In addition, the Office for Civil Rights has refused to lodge complaints submitted by the Plaintiff.

49. The Plaintiff has access to a cattle farm in Rutherford County, Tennessee in which he would be eligible for various USDA programs in the past and present, as well as the grants for a meat processing facility, but the Federal Defendants closed off all opportunities with its continuing violations discrimination.

50. The Seventh Circuit held in CFPB v. Townstone Financial, Inc., ___ F.4th ___ (7th Cir. 2024), 2024 WL 3370023 "When Congress amended its civil liability provision so that the regulatory agencies responsible for enforcing the ECOA would be required to refer a case to the Attorney General whenever the agency believed a creditor "has engaged in a pattern or practice of discouraging ... applications for credit in violation of section 1691(a) of this title," 15 U.S.C. § 1691e(g), Congress thus confirmed that discouraging an application for credit is a violation of the ECOA."

51. Defendant the Department of Agriculture is an agency of the United States that regularly extends credit to farmers, ranchers, corporations and partnerships. All in which the Plaintiff has operated at such a capacity in the past. To be clear, the federal defendants run a credit check on the principals to decide credit worthiness. If the application is successful, the principal is then bound as a guarantor for the loan.

52. The Plaintiff is entitled to relief.

## COUNT TWO

### 42 U.S.C. § 1981, 42 U.S.C. § 1983 and Retaliation

53. Plaintiff Restates and Realleges 1-52.

54. Section 1981 prohibits racial discrimination in the making and enforcement of contracts. See Runyon v. McCrary, 427 U.S. 160, 168 (1976). At the time Jett was decided, 42 U.S.C. § 1981 provided: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other.

55. The Plaintiff made applications for farm ownership loans and farm operating loans on two occasions, in March of 2023 and January of 2024. The Federal Defendants retaliated and denied the aforementioned loan contracts because of the Civil Rights activities of the Plaintiff.

56. The Plaintiff has been on the front lines and organizing Black farmers to fight the injustices that continues to plague and threaten the survival of this protected class against the aggressions of the Federal Defendants.

57. Further, the Federal Defendants again retaliated against the Plaintiff, who is a third-party beneficiary two loans that were written off in October of 2022. There was a surplus of at least $160,000 in the pandemic relief from section 22006 of the Inflation Reduction Act.

58. The Federal Defendants further retaliated and is speculated to have given the surplus funds belonging to the Plaintiff to a guaranteed lender and its attorney. The Plaintiff will need to conduct discovery to confirm the whereabouts of the money.

59. Although the loans originated in Kentucky, the Federal Defendants reached out to the State of Tennessee to extinguish the liability to the Plaintiff as a third-party beneficiary. Moreover, the first mortgage, which is a contract, was guaranteed by the Plaintiff and the Federal Defendants. The agreement expressly waived jurisdiction from Kentucky to where the Plaintiff resides, which is Rutherford County, Tennessee.

60. The loan that received relief from section 22006 of the American Rescue Plan Act was refinanced in 2008 and included the Plaintiffs name in his individual capacity. Section 22006

18

of the Inflation Reduction Act created a new obligation for the Federal Defendant and the Plaintiff under Congressional mandate.

61. This Court has held in *ND Acquisitions Corp. v. Bel Pre Leasing Co.*, NO. 3-15-0796, 4 (M.D. Tenn. Sep. 10, 2015) ("With respect to interstate contractual obligations, the Supreme Court has emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities. *Burger King Corp. v. Rudzeqicz*, 105 S.Ct. 21174, 2182 (1985); *Vireo Systems*, 2015 WL 1893461 at * 6. Where a defendant has created continuing obligations between itself and the residents of another forum, it manifestly has availed itself of the privilege of conducting business there. *Air Products and Controls*, 503 F.3d at 551.")

62. The discrimination and retaliation would not happen "but for" the Plaintiff is Black and a member of a protected class. The Federal Defendants knows of the Plaintiffs civil rights activities through suits initiated by the Cowtown Foundation Inc..

63. A good example of the "but for" Congress created section 22007 of the Inflation Reduction Act. The act was for discrimination prior to January 1, 2021. Moving forward, the Federal Defendants denied new loan requests based on discrimination prior to 2021. The monetary award received by the Plaintiff that discrimination against the Plaintiff happened.

64. Moreover, the rules and regulations of 22006 and/or rules and regulations by the Federal Defendants allowed successful claimants to receive new federal benefits and loans. But true to form, the Federal Government violated section 22006 and its own rules and regulations to deny the Plaintiff new opportunities to receive federal benefits do to his civil rights activities, race and color.

65. Defendant First Bank has yet again discriminated against the Plaintiff, 42 U.S.C. § 1983, because of his race and color by accepting money from the Federal Defendants that they were not entitled to as part of a scheme to defraud the Plaintiff. The scheme consists of fraudulently

creating debts against the Plaintiff and having the Federal Defendants execute further debts owed by the Plaintiff.

66. According to the 1099 IRS tax form the discrimination on the contract occurred on July 31, 2023, see *Gooch v. Elec. Power Bd. of Metro. Nashville & Davidson Cnty.*, 608 F. Supp. 3d 572, 579 (M.D. Tenn. 2022) ("Under 42 U.S.C. § 1981 "persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." § 1981(a). The Supreme Court has held that § 1981 's cause of action does not extend to state actors. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). However, § 1983 creates a cause of action for persons deprived of any civil right, including the "rights guaranteed by § 1981." See Arendale v. City of Memphis, 519 F.3d 587, 595 (6th Cir. 2008) (quoting Jett, 491 U.S. at 733, 109 S.Ct. 2702 ). A plaintiff has one year to file a § 1983 claim. Carter v. Kulp, 2021 WL 1061846 at *4 (M.D. Tenn. 2021).

67. Federal agencies, such as the USDA do not have to give a hearing to execute offsets or judgments against debtors. Ultimately, the IRS or the USDA could force sale of real estate or judgments against both real and personal property of the debtor that per se has nothing to do with the mortgaged property. It's a form of retaliation used against Black farmers, such as the plaintiff.

68. The Plaintiff is entitled to Relief.


**COUNT THREE**

**PROMISSORY FRAUD, FRAUDULENT CONCEALMENT AND VIOLATION EQUAL PROTECTION AND DUE PROCESS OF THE FIFTH AMENDMENT**

20

69. Plaintiff Restates and Realleges 1-68.

70. The Federal Defendants have made numerous intentional misrepresentations to Black farmers, such as the Plaintiff, that they knew were false to continue a pattern and practice to deprive the Plaintiff of equal protection under the law, due process and the right to seek federal assistance to buy a new farm within the jurisdiction of this Court.

71. Under Tennessee law, the elements of fraud or fraudulent misrepresentation are: (1) an intentional misrepresentation with regard to a material fact; (2) made knowingly and with a fraudulent intent; (3) upon which the plaintiff reasonably relied and suffered damage; and (4) which relates to an existing or past fact or, if the claim is based on promissory fraud, the misrepresentation embodied a promise of future action without the present intention to carry out the promise. First Nat'l Bank v. Brooks Farms, 821 S.W.2d 925, 927 (Tenn. 1991); Stacks v. Saunders 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990). The terms, "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are synonymous. Concrete Spaces, Inc. v. Sender, 2 S.W.3d 901, 904 n.1 (Tenn. 1999).

72. Dewayne Goldmon of the Equity Commission represented to the Plaintiff that the Plaintiff would be eligible for down payment assistance loans and land loans from the USDA to go replace a foreclosed property once owned by the Plaintiff. Mr. Goldmon knowingly made a false representation to the Plaintiff due to the rules and regulations implemented by Defendant Vilsack that automatically denies farmers who have not purchased a farm in 10 years. Upon belief and speculation, the Defendants are making loans to White farmers who have not purchased farms within 10 years and

21

instructing the White farmers to purchase in the name of their kids and wives, if the kinfolks do not currently have a loan.

73. Former Secretary of Agriculture, Tom Vilsack, made the representation that Black farmers who have suffered discrimination in the past would be eligible for future federal assistance. Defendant Vilsack made the representation knowing that it was false and had already taken measures that the language for grants applied for under the American Rescue Plan Act of 2021 and the Inflation Reduction Act of 2022 all carried the language that applicants could not be in past due on loans with the USDA. Defendant Vilsack further took the measure to make sure that any alleged debt could not be contested administratively and delayed any monetary relief to Black farmers in furtherance of the conspiracy so that alleged past due debts could not be paid.

74. Defendant Vilsack and now Sec. Rollins, by her own admission, stated that the agency did things in the past to make sure that those complaints lodged by Black farmers were not resolved. Moreover, only the Assistance Secretary of Civil Rights has authority from Congress to resolve the complaints. There has not been an ASCR since 2016 and therefore it's a violation of equal protection and due process under the Fifth Amendment. White farmers routinely proceed and have their grievances heard by the ALJ in accordance with the APA.

75. The pattern and practice of denial of equal protection and due process under the Fifth Amendment is still a weapon used against Black farmers, such as the Plaintiff to deny pandemic relief in the forms of grants enjoyed by White farmers to this day. The Plaintiff suffered and continues to suffer from the tactics employed by the Defendants.

22

76. Moreover, the Defendant will never change the practice and pattern in our natural life, so the Court should consider an award for future damages. See Smith v. Bank of Am., N.A., NO. 3-13-0117, 6 (M.D. Tenn. May. 15, 2013) (" Promissory fraud is a type of fraud perpetuated by means of a false promise of future action. Shahrdar v. Global Housing, Inc., 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998); Roopchan v. ADT Security Systems, Inc., 781 F.Supp.2d 636, 653 (E.D. Tenn. 2011).")

77. The Defendants represented to his Court that the Plaintiff would be compensated in November or December of 2023. Defendant Vilsack caused to be printed that the last checks under section 22007 to Black farmers would be printed and distributed no later than December 31, 2023. The Plaintiff relied on that promise and suffered injuries due to the misrepresentation.

78. Monica Rainge, from the Office of Civil Rights intentionally misrepresented to the Plaintiff that the Office of Civil Rights could not process or resolve a pending discrimination complaint of 2022 stating that the Plaintiff had a pending appeal in the Eleventh Circuit Court of Appeals. The state was made to further deny the Plaintiff equal protection and due process under the Fifth Amendment.

79. Dewayne Goldmon of the Equity Commission and Chief of the FSA, Zach Ducheneaux told the Plaintiff on two separate occasions that Black farmers, such as the Plaintiff in November of 2023 and January of 2024, that Black farmers were not entitled to pandemic relief under section 1006 of the American Rescue Plan Act of 2021. The promise was made to Black farmers by Congress to Socially Disadvantaged Farmers or Distressed farmers and the Defendant Secretary has continued his pattern and practice of discrimination against Black farmers by using

23

Case 3:23-cv-00340    Document 85-1    Filed 02/20/25    Page 23 of 56 PageID #: 1128

his position to deny the promise made by Congress. The Plaintiff will provide the text and email in his motion for summary judgment that will be filed soon. The email was sent to Goldmon and Ducheneaux after prior conversations on January 19, 2024 at 12:53pm cst.

80. Defendant Vilsack and now Secretary Rollins used his position as the Secretary of Agriculture to deny the promise made to farmers made by the Department of Agriculture to aide farmers who have suffered through the China Trade Wars, willfully signaling out Black farmers, such as the Plaintiff, to deny the same protections and federal assistance to White farmers and ranchers. The Plaintiff suffered an injury and continues to suffer from the denial of equal protection and due process by the defendants.

81. Defendant Rollins caused injury to the Plaintiff by failing to enforce the Packers and Stockyards Act on a claim by the Plaintiff against a similar situated White farmer in Springfield, Tennessee. Defendant Rollins took an oath of office to enforce the laws, rules, and regulations of the Department of Agriculture. Defendant Vilsack continues to deny the Plaintiff equal protection and due process under the Fifth Amendment due to his continued practice of pattern of discrimination. The Plaintiff continues to suffer injuries and denied federal assistance under section 1001 of the American Rescue Plan Act of 2021.

82. Defendant Tom Rollins violated the tort of promissory fraud by maintaining Black farmers, such as the Plaintiff, was able to get future federal assistance through publication and by the terms of the American Rescue Plan Act of 2021 and the Inflation Reduction Act of 2022. Instead, Defendant Vilsack continues the same

24

pattern and practice of discrimination of Black farmers, such as the Plaintiff, by
failing to let Black farmers contest alleged past debt, creating rules and regulations
that disproportionately affect Black farmers on purchasing new land through the
Department of Agriculture. Nothing in the language of section 1006 of the American
Rescue Plan Act of 2021 or sections 22006 and 22007 of the Inflation Reduction Act
o 2022. The denial, on two occasions after the passage of section 1006 of the
American Rescue Plan Act, caused injury to the Plaintiff seeking to purchase farm
land in Rutherford County, Tennessee. *Adams v. Delk Indus.* , Case No. 3:19-cv-
00878, 7 (M.D. Tenn. Feb. 2, 2021) ("As a fraud claim, "it must be stated with
particularity, and the plaintiff must, at a minimum, allege the time, place and content
of the misrepresentations; the defendant's fraudulent intent; the fraudulent scheme;
and the injury resulting from the fraud." *Id*.; Fed. R. Civ. P. 9(b). While "intent . . .
and other conditions of a person's mind may be alleged generally," *id*.")

83. The Federal Defendants knew the promise made to Black farmers by Congress for
future relief under section 1006 of the American Rescue Plan Act was not going to be
enforced by Defendant Vilsack. Defendant Vilsack delayed pandemic relief to Black
farmers so that the Act could be amended in the Inflation Reduction Act to deny the
right of Black farmers to enjoy pandemic relief as similar situated White farmers and
ranchers.

84. The Federal Defendants and Defendant First Bank fraudulently concealed the fact
that the Federal Defendants sent a check from the US Treasury in the name of
Defendant First Bank (Formerly Farmers National Bank and Corey Lea Inc. or even

the Plaintiff Corey Lea). The 1099c form that is in possession of the Plaintiff states the occurrence of the event was July 31, 2023.

85. Both Defendants, First Bank and the Federal Defendants conspired to further defraud the Plaintiff and that Defendant First Bank was not due any more money from a 2014 foreclosure.

86. The Plaintiff is entitled to Relief.

**Count Four**
**42 U.S.C. § 1982**

87. Plaintiff Restates and Realleges 1-86.

88. Plaintiff Lea received a letter from the FSA about or around February 25, 2024. The letter indicated that the Plaintiff had pandemic eligibility for $386,098.87. The Federal Defendants only used approximately $228,083.86. It was later discovered that the Federal Defendants were sending guaranteed lenders the balance due to Black farmer instead of sending the money to the eligible Black applicants or wholly owned incorporated farm operations based on discrimination, see *Provost v. Vilsack* 1:24-cv-00920. In contrast, it is believed that White farmers who received benefits from section 22006 of the Inflation Reduction Act received direct deposits of the full amount of eligible amount of relief or the surplus of debt written off. The Plaintiff is a third-party beneficiary to the funds eligible by contract with Defendant First Bank as a guarantor.

89. The Plaintiff owns a home in Rutherford County, Tennessee. The Federal Defendants **has** conspired with the hub defendants, Defendant First Banks and their representatives to deny full pandemic relief to Black farmers, such as the Plaintiff, sending monetary relief that belongs to the Plaintiff to former guaranteed lenders on property that was sold in May 29, 2014. The Federal Defendants further provided debt relief under sections 22006 and 22007 of the Inflation Reduction Act that caused tax implications on the Plaintiff. In February of 2025, the Plaintiff received a 1099G form to pay taxes on debt relief. White farmers receive regular

1099c farms for their pandemic relief and also received in the name of the corporations of for those who were incorporated. The loans associated with the pandemic relief for the Plaintiff should have been in the name of Corey Lea Inc. Now taxes due is nearly $175,000 in which the Plaintiff cannot afford to pay that tax burden. In furtherance of the conspiracy, the Plaintiff is at risk of tax liens and or foreclosure of this property.

90. On January 29, 2024, the Plaintiff went to the local FSA office and informed the Plaintiff that he could not purchase a farm due to alleged debt in the amount of $10,950 past due. The Plaintiff previously filed a complaint requesting a hearing before the ALJ and the Office for Civil Rights to dispute the alleged debt. In both instances, the Office for Civil Rights and the ALJ refused to docket the complaint. April of 2023 and May of 2022.

91. Due to Defendant Rollins failure to act and scheme to retaliate against the Plaintiff, based on race. Defendant Rollins has used deprivation of due process and equal protection against the Plaintiff from seeking federal assistance to purchase new property. White farmers that received relief from section 22006 of the Inflation Reduction Act were able to receive new federal assistance. Plaintiff Lea, the real party in interest, of the alleged debt is at risk at receiving a judgment that can be placed against his home and other assets. The Defendants have violated 42 U.S.C. § 1982. Section 1982 guarantees to all citizens the same rights "to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. To violate the statute, the challenged action must impair a property interest, say by decreasing the value of the property or making it significantly more difficult to access. City of Memphis v. Greene, 451 U.S. 100, 122–24 (1981).

92. The Federal Defendants continue to discriminate against the Plaintiff because he is Black and a member of a protected class. Moreover, a judgment and subsequent lien placed on the Plaintiff's home the Defendant will decrease the value and significantly more difficult to get credit lines using the property as collateral. The federal defendants further indicated that the Plaintiff had additional personal property in the form of monetary relief in the amount

27

of approximately $187,000 in pandemic relief. Similarly situated White farmers who received relief under section 22006 of the Inflation Reduction Act received full relief by direct deposit. The difference is that the Federal Defendants administrative wrote off the debt of the Plaintiff and did not give the Plaintiff the overages as provided to White Farmers.

93. The right to hold on to the property currently owned in Rutherford County, Tennessee, is an anticipatory joint claim of equal protection and due process under the Fifth Amendment and first to file rule by the Plaintiff in a effort save his current assets and the right to the surplus funds from October 18, 2022.

94. The Federal Defendants conspired with Defendant "Hubs," Defendant First Bank, agents and/or representative to deny timely pandemic relief to Black farmers so that the Plaintiff could get minimal, if any, pandemic relief. In furtherance of the plan, Defendant Rollins would not enforce guaranteed contracts or allow Plaintiff to contest any debts alleged to the Federal Defendant or Defendant First Bank.

95. In addition, in furtherance of the conspiracy, the Federal Defendants would create rules and regulations, 7 CFR 3550, that would carry potentially civil and criminal penalties, for farmers such as the Plaintiff for applying for grants created by the American Rescue Plan Act of 2021.

96. The Federal Defendants and Defendant First Bank are subject to continued violations doctrine through the denial of equal protection and due process under the Fifth and Fourteenth Amendments. The conspiracy directly affect the ability of the Plaintiff to purchase new property and hold to his property currently owned on Rutherford County, Tennessee. See *Bazzi v. City of Dearborn,* 658 F.3d 598, 602 (6th Cir. 2011) - Civil conspiracy under §§ 1982 T"he claimant "must show that (1) a single plan existed, (2) [the defendant] shared in the general conspiratorial objective to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to [the plaintiff]."

97. In furtherance of the conspiracy, the Federal Defendants have yet to appoint an Assistant Secretary of Civil Rights who has the sole authority resolve complaints lodged by Black farmers

28

at the USDA. The only resolution for relief now is declaratory relief for some claims and monetary relief for claims over 180 days pursuant to the APA. The inactions to resolve complaints filed or attempted to file by the Plaintiff continue to cause injuries.

98. The Plaintiff is entitled to relief.

**COUNT FIVE**

**RETALIATION**

99. Plaintiff Restates and Realleges 1-98.

100.    The Federal Defendant and Defendant First Bank continue to retaliate against the Plaintiff because he is Black and a member of a protected class. The continued pattern and practice by the Federal Defendants are not to resolve complaints filed by the Plaintiff and other Black farmers and ranchers to make them ineligible for future federal assistance to include grants, loans and other assistance to purchase new property. The federal defendants made the relief for debt nontaxable 1099c IRS tax form to recipients of section 22006 of the Inflation Reduction Act, in which the recipients were overwhelmingly White.  In contrast, the Federal Defendants made the pandemic relief under section 22007 of the Inflation Reduction Act taxable to an overwhelming list of recipients of Black farmers by issuing a 1099g IRS tax form. That Plaintiff received a 1099g IRS form in February of 2025.

101.    Defendant First Bank and its agent conspired with the Federal Defendants to unjustly enrich themselves with pandemic relief money from section 22006 of the Inflation Reduction Act by receiving a check from the US Treasury in the name of the guaranteed lender and the Plaintiff.

102.    The Federal Defendants admit that Black farmers received less than one tenth of one percent of pandemic relief, which included debt relief given to White farmers

29

through the Trump's China Trade Wars and the American Rescue Plan Act. Plaintiff maintains that Defendant Vilsack retaliated against Black farmers by delaying pandemic relief for nearly 3 years after similar situated White farmers and ranchers. While instituting a plan to create a tax obligation to Black farmers who may get debt relief and very little actual monetary damages for past discrimination.

103.    Defendant Rollins had the opportunity to pay the Plaintiff and other Black farmers through section 1006 of the American Rescue Plan Act of 2021 but refused to do so. Subsequently, Defendant Washington had his surrogates to disseminate information that Black farmers were not entitled to benefits given to White farmers under section 1006 until the agency could convince Congress to change the language. Even at that, Black farmers have not received relief under section 1006, while White farmers are still benefitting from pandemic relief from the American Rescue Plan Act.

104.    The Plaintiff is entitled to relief.

## COUNT SIX

### 42 U.S.C. § 1985(3)

105.    The Plaintiff Restates and Realleges 1-104.

106.    The Plaintiff in this case is Black, as defined by of ECOA, and a member of a protected class. In addition, as defined by Socially Disadvantaged Farmer, has suffered discrimination by Defendants and his agents. In this case, a private bank, a private attorney and representatives or lobbyist for the private bank, "[t]o sustain a claim under section 1985(3), a claimant must prove both membership in a protected class and discrimination on account of it." Estate of Smithers v. City of Flint, 602 F.3d 758, 765 (6th Cir. 2010) (citing Bartell v. Lohiser, 215 F.3d 550, 559 (6th Cir. 2000)).

107.    The Federal Defendants concedes that Black farmers, such as the Plaintiffs, were

violated equal protection of the laws and due process under the Fifth Amendment, see

*Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1280 (M.D. Fla. 2021) ("Specifically, the

Government cites to two statistics related to recent USDA programs that have

disproportionately benefited White farmers. The first statistic shows 99.4% of relief

under USDA's Market Facilitation Program (MFP) went to White farmers. Response

at 10 (citing N. Rosenberg, USDA Gave Almost 100 Percent of Trump's Trade War

Bailout to White Farmers, Farm Bill Law Enterprise (July 24, 2019)). The second

statistic shows 97% of the $9.2 billion in pandemic relief provided through USDA's

Coronavirus Food Assistance Program in 2020 went to nonminority farmers.

Stabenow Floor Statement at 1264 (citing J. Hayes, USDA Data: Nearly all Pandemic

Bailout Funds Went to White Farmers, Envir'l Working Group (Feb. 18, 2021)).")

108.    Again, *Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1290 (M.D. Fla. 2021) ("Indeed,

the Supreme Court has recognized in the context of a standing analysis, that the injury

in an equal protection case is "the denial of equal treatment resulting from the

imposition of the barrier, not the ultimate ability to obtain the benefit ... the injury is

the inability to compete on an equal footing." Gratz, 539 U.S. at 262, 123 S.Ct.

2411 (internal citations and quotations omitted). Thus, that injury—the unequal

treatment based solely on race")

109.    The Federal Defendants to this day remain a passive participant in discrimination.

For example, in section 1001 of the American Rescue Plan Act of 2021, the language

state the "Secretary must," it must be noted that at White farmers received 99.9

percent of that funding. When you drop down to section 1006, it gives the Secretary

31

discretion whether he will implement the programs intended to help SDF's with pandemic relief. Upon speculation and belief, the Defendants have not distributed any relief to Black farmers under section 1006.

110.     Moreover, the Defendants have not appointed an Assistant Secretary for Civil Rights. This shows that the Defendants have no intention of fixing the systemic problem of discrimination at the USDA, see *Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1279 (M.D. Fla. 2021) ("The historical evidence includes things such as a dramatic decrease in minority owned farms from 1920 to 1992; USDA's discriminatory treatment of SDFRs when they applied for loans through USDA, resulting in lower approval rates among minority farmers; when loans were offered, they were frequently for reduced amounts compared to the amount sought by SDFR applicants and on less favorable terms; inequities in how the loans of minority farmers were serviced by USDA; lack of SDFR representation on local USDA committees that were responsible for overseeing USDA loan programs; and concerted efforts by USDA to ignore complaints of discrimination made by minority farmers. Response at 3-6, 20-25 (collecting evidence). It is undeniable—and notably uncontested by the parties—that USDA had a dark history of past discrimination against minority farmers. Compare id. with Reply at 4.")

111.     The Plaintiffs have met the four prongs of the conspiracy claim, see *African-American Cultural Association v. Davidson Hotel Comp*, No. CIV 99-1421 BB/WWD, (D.N.M. Aug. 3, 2001) ("The provisions of 42 U.S.C. § 1985(3) provide for a recovery of damages by a party who is injured as a result of a conspiracy to deprive any person of equal protection of the laws or of equal privileges and

immunities under the laws. The essential elements of a civil rights conspiracy claim are: (1) a conspiracy;(2) to deprive plaintiff of equal protection or equal privileges and immunities;(3) an act in furtherance of the conspiracy, and (4) an injury or deprivation resulting therefrom. Griffin v. Breckenridge, 403 U.S. 88, 102-103 (1971); Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993).")

112.    The first prong was met by the Plaintiff stating that the Federal Defendants conspired with Defendant First Banks, agents, lobbyist, or representatives for the private banks. The second prong was met by the Defendant conceding that Black farmers, such as the Plaintiff, were not giving equal protection or equal privileges as the White farmers to resolve administrative complaints. The third prong was met after the Plaintiff alleged that Defendants Vilsack and the Department of Agriculture failed to write off debt for Black farmers for decades to deny Black farmers future federal assistance. The fourth prong was met by the Plaintiff alleging the denial of pandemic relief from a culmination of deprivation of civil rights leading up to pandemic relief. Defendants Windsor Group LLC, The Midtown Group and Analytic Acquisitions, hereafter known as "hubs,"are private companies selected by the Federal Defendants to administer section 22007 of the Inflation Reduction Act. The hubs conspired with the federal defendants by failing to post the rules or guidelines to Black farmers or wholly owned farming operations that are incorporated who have been discriminated in the past.

113.    The Plaintiff is entitled to relief.

**COUNT SEVEN**

**TENNESSEE CONSUMER PROTECTION ACT**

114.    Plaintiff Restates and Realleges 1-113.

115. The Federal Defendants offer services of extending federal assistance to farmers throughout the United States. The Plaintiff is a Black farmer who is seeking land ownership loans from the Defendants to buy property within the jurisdiction of this Court.

116. The American Rescue Plan Act of 2021, section 1006, and the Inflation Reduction Act of 2022 both provide avenues for Black farmers, such as the Plaintiff, to get federal assistance through grants and loans to purchase new property due to the discrimination admitted by the Defendants. The discretion of the

117. The Plaintiff was told by the Tennessee FSA employees on January 29, 2024, that he was not eligible to get a farm ownership loan since the agency rules and regulations require that applicants must have closed on a farm ownership loan within 10 years of the application date. Defendants later admit that the Plaintiff was eligible for new loans with the Department of Agriculture. The Federal Defendants did not offer the loan to the Plaintiff after learning the Plaintiff was eligible for new loans.

118. There is nothing in American Rescue Plan Act or the Inflation Reduction Act, which both are Congressional Acts, state that the applicant must have purchased property within the last 10 years. The acts were passed due to the decades of admitted discrimination by the Defendants.

119. Moreover, Congressional Acts supersede rules and regulations of the agency. The Defendants attempt to use agency rules and regulations to deny a federal contract of assistance or void the intent of Congress to make farmers like the Plaintiff whole, see *EPAC TECHNOLOGIES, INC V. THOMAS NELSON,* INC, 12-cv-0463, MDTN- "The TCPA is designed to "protect consumers and legitimate business enterprises

34

from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-102(2). "Trade or commerce" means the advertising, offering for sale, lease or rental, or distribution of goods, services or property. Tenn. Code Ann. § 47-18-103(19). A "consumer" is defined to include any natural person who seeks or acquires goods or services. Tenn. Code Ann. § 47-18-103(2).

120. Defendant First Bank is liable for contributory negligence through the continuing violations doctrine. The FSA employee specifically identified the guaranteed loan as one of the contributing causes of the Plaintiff being denied for the new farm loan when in fact, Defendant First Bank has been paid nearly$300,000 more than the amount of the loan.

121. There was a duty owed to the Plaintiff by Defendant First Bank to no breach the guaranteed lenders contracts and the rules and regulations that govern the contract with the Federal Defendants. Defendant First Bank Violated the rules by failing to return the overages to the Federal Defendants in a scheme to further harm the Plaintiff.

122. The conduct by the Federal Defendants and Defendant First Bank was a breach of duty.

123. The malicious conduct of Defendant First Bank and the Federal Defendants caused injury to the Plaintiff. The conduct by Defendant First Bank and the Federal Defendants was cause in fact for denial of future loans by the Federal Defendant to the Plaintiff, see *Humphrey ex rel. Humphrey v. Yobonta*, NO. 3:19-cv-00782, 7

35

(M.D. Tenn. Mar. 1, 2021) ("The Tennessee Supreme Court has explained what is required for a plaintiff to establish a negligence claim:

In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause."")

124.    The Plaintiff is entitled to relief.

**COUNT EIGHT**

**BREACH OF CONTRACT THROUGH CONTINUING VIOLATIONS DOCTRINE**

125.    Plaintiff Restates and Realleges 1-124.

126.    In October of 2022, the Federal Defendants entered a contract to pay off alleged debt of the Plaintiff, Corey Lea is the real party in interest, due to dissolution of Corey Lea Inc. At worst, the Plaintiff is a third-party beneficiary. The payment and all correspondence between the Defendant and Plaintiff were originated or received in the State of Tennessee. On July 31, 2023, the Federal Defendants sent money to Defendant First Bank to cancel debt, unbeknownst to the Plaintiff. Later the Plaintiff received a 1099 IRS form from the Federal Defendants showing a cancellation of the guaranteed loan.

127.    The Plaintiff did not agree with the amount paid off by the Defendant and filed an administrative complaint. The Defendant further violates principles of equal protection and due process under the Fifth Amendment by refusing to docket the complaint. Again, in EPAC- "Tennessee law does not recognize a claim for breach of

36

the duty of good faith and fair dealing as a cause of action in and of itself. First Tenn. Bank Nat. Ass'n v. Republic Mortgage Ins. Co., 276 F.R.D. 215, 220 (W.D. Tenn. 2011). Every contract imposes upon the parties a duty of good faith and fair dealing in the performance and interpretation of the contract. However, a claim based on the implied covenant of good faith and fair dealing is not an independent cause of action in Tennessee; it is part of an overall breach of contract claim. Emergency Medical Care Facilities, P.C. v. BlueCross BlueShield of Tenn., Inc., 2015 WL 3581305 at * 6 (W.D. Tenn. June 5, 2015) (citing Jones v. LeMoyne-Owen College, 308 S.W.3d 894, 907 (Tenn. Ct. App. 2009))."

128. The Defendants have again engaged in a pattern and practice of unfair and deceptive trade practices by failing to allow the Plaintiff to contest the debt so that the defendants could retaliate and deny future federal assistance and place a tax burden on the Plaintiff that he would not be able to pay. The tax burden could lead to the foreclosure of the home of the Plaintiff that is located within the jurisdiction of this Court.

129. The Plaintiff is entitled to relief.

**COUNT NINE**

**Negligence under the Federal Tort Claims Act, 28 U.S.C. § 1346 et seq. (the "FTCA").**

130. Plaintiff Restates and Realleges 1-129.

131. The Plaintiff has filed complaints with the Office for Civil Rights at the Department of Agriculture over the last 3 years. The Defendants have once again violated the principles of equal protection and due process under the Fifth

Amendment by failing to docket the complaints. The Defendants allow White farmers to docket complaints before the Administrative Law Judge.

132.    Moreover, the claims are now ripe before this court, pursuant 28 U.S.C. § 2401, which provides: A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented. 28 U.S.C. § 2401(b) (emphasis added). The FTCA further provides that "[t]he failure of an agency to make final disposition of a [plaintiff's administrative] claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim," allowing the plaintiff to file suit in federal court. Id. § 2675(a).

133.    The Federal Defendants are required to give a final agency decision pursuant to the Administrative Procedures Act. In this case, the violation is compounded with the violations of the principles of equal protection and due process under the Fifth Amendment.

134.    The Federal Defendant failed to adjust the rules and regulation of a time limit to apply of a land ownership loan due to Defendants own failures to address pending discrimination complaints lodged by the Plaintiff. Moreover, the Defendants failed to adjust their own rules and regulations to the Congressional Act. The failure to do the aforementioned things is continued violations of negligence that continue to cause harm to the Plaintiff. See *AJJT et. al. v. the United States, 15-cv*-01073,MDTN-"When a plaintiff timely files and pursues an administrative claim in compliance with

38

§ 2401(b), therefore, the FTCA preempts application of the Tennessee statute of repose to bar a later federal suit by that plaintiff."

135.    The Federal Defendants updated the 1099 tax forms for section 22006 of the Inflation Reduction due to the overwhelming amount of White farmers seeking relief. Section 22007 of the Inflation Reduction Act overwhelmingly affected Black farmers for past discrimination prior to 2021. The Plaintiff received relief from both sections and was adversely affected by the Federal Defendants decision not to provide 1099c forms to Black farmers in section 22007.

136.    In Tennessee, proximate cause requires that harm must have been foreseeable. *Ford Motor Co. v. Eads,* 224 Tenn. 473, 457 S.W.2d 28, 32 (1970). In addition, proximate cause means cause in fact or that "but for" the actor's negligence the injury would not have been inflicted. *Shouse v. Otis,* 224 Tenn. 1, 448 S.W.2d 673, 676 (1969). In order to establish proximate cause, a plaintiff must introduce evidence that affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the injury. *Lindsey v. Miami Development Corp.,* 689 S.W.2d 856, 861 (Tenn.1985). See ex. (

137.    Moreover, defendant Rollins breached her duty to make sure that the FSA employees followed the Congressional Mandate from section 22006 and allow Black farmers, such as the Plaintiff to apply for new USDA loans. "A breach of duty imposed by statute or regulation is negligence per se if the party injured is a member of the class of persons that the statute or regulation was intended to protect. *Alex v. Armstrong,* 215 Tenn. 276, 385 S.W.2d 110, 114 (Tenn.1964); *Traylor v. Coburn,* 597 S.W.2d 319, 322 (Tenn.App. 1980); *see also Griffin v. United States,* 500 F.2d 1059, 1069-70 (3d Cir.1974) (lower court applied doctrine of

39

negligence per se and court of appeals stated that failure to adhere to regulations was not within the discretionary function exception)."

138.    Defendant First Bank is negligent for causing injury to Plaintiff by falsely claiming the Plaintiff owed more money on a foreclosure in 2014 by submitting a claim for money in the name of the Plaintiff for pandemic assistance under section 22006 of the Inflation Reduction Act.

139.    The Plaintiff is entitled to relief.

## COUNT TEN
### VIOLATION EQUAL PROTECTION AND DUE PROCESS OF THE FIFTH AMENDMENT AND FIFTH AMENDMENT TAKINGS CLAUSE

140.    Plaintiff Restates and Realleges 1-139.

141.    The Plaintiff asserts that the Federal Defendants finally collected the money from the money from the private attorney and Defendant First Bank from the foreclosure sale. Which is roughly identical to the money that is the difference of the surplus complained about.

142.    An alternative theory, in retaliation, the Federal Defendants then returned the money kept from Defendant First  Bank and its attorney. "The Fifth Amendment to the United States Constitution states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The government commits a Fifth Amendment taking when it retains the proceeds from a tax foreclosure sale that exceed the delinquent property tax debt. Freed v. Thomas, 81 F.4th 655, 658–59 (6th Cir. 2023).

143.    Another theory is that Congress made available the funding for Socially Disadvantaged Farmers and Ranchers and the Federal Defendants withheld the money from the Plaintiff because of his race and color.  The Plaintiff asserts that White famers that received relief under section 22006 of the Inflation Reduction Act were able to get full compensation of their

40

whole package. The Plaintiff will need discovery to figure out what theory is viable to support his claims.

144.    Plaintiff is entitled to relief.

## COUNT ELEVEN

### RETALIATION UNDER 42 U.S.C. § 1981 (Heirs Property)

### and 42 U.S.C. § 2000d

145.    Plaintiff Restates and Realleges 1-144.

146.    Plaintiff is due to be an heir to farmland in Virginia, North Carolina and Tennessee.

147.    The Federal Defendants have been a driving force behind Black land loss from the 1920's to present. Black farmers and ranchers have loss over 15 million acres since the aforementioned time period with only an estimated 2.3 millions acres left, see *Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1278-79 (M.D. Fla. 2021) (" The historical evidence includes things such as a dramatic decrease in minority owned farms from 1920 to 1992; USDA's discriminatory treatment of SDFRs when they applied for loans through USDA, resulting in lower approval rates among minority farmers; when loans were offered, they were frequently for reduced amounts compared to the amount sought by SDFR applicants and on less favorable terms; inequities in how the loans of minority farmers were serviced by USDA; lack of SDFR representation on local USDA committees that were responsible for overseeing USDA loan programs; and concerted efforts by USDA to ignore complaints of discrimination made by minority farmers.")

148.    The Federal Defendants Conspired with the "hubs" to make heirs not eligible for section 22007 of the Inflation Reduction Act. The Federal Defendants admit that heirs are eligible for federal programs. Section 22007 of the Inflation Reduction Act is a federal program administered by the USDA and the hubs. See eligibility https://www.farmers.gov/working-with-us/heirs-property-eligibility.

41

149.    The Federal Defendants destroyed the documents of eligible Black famers after the

Pigford litigation, failed to resolved complaints other than a minimum amount less that 10 of

what is believed to be over 20,000 complaints lodged at the Office for Civil Rights since the

year 2000.

150.    Moreover, the Federal Defendants instructed the "hubs" not to make heirs to Black

farmers who owned property eligible for section 22007 in retaliation against Black farmers.

Similarly situated White farmers received relief from pandemic relief and through the ALJ.

The USDA has not appointed an ASCR with the Office for Civil Rights since 2016. The

ASCR is the only person who can provide relief to those Black farmers who have file

administrative claims through 42 U.S.C. 2000d and codified under 7 CFR 2000d.

151.    The Federal Defendants  and District Courts around the country recognize heirs of the

estate of farmers have legal standing to bring suit on behalf of deceased persons who had

regular business or attempted to do business with the Federal Defendants, see *Wilkinson v.*

*U.S.*, Case No. 1:03-cv-02, (D.N.D. Nov. 9, 2007) ("The Court finds that the United States

has injured the Wilkinsons in its trespass and conversion of real and personal property and by

intentionally inflicting emotional distress. The Court **ORDERS** the United States to pay the

Wilkinsons $459,976 in damages. ")

152.    Plaintiff is entitled to relief.

**COUNT TWELVE**

**BREACH OF FIDICUARY DUTY**

153.    The Plaintiff Restates and Realleges 1-152.

154.    In order to recover for breach of fiduciary duty under Tennessee law, a plaintiff must

establish: (1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury

to the plaintiff or benefit to the defendant as a result of the breach.4 In re Estate of Potter,

2017 WL 4546788, at * 2 (Tenn. Ct. App. Oct. 11, 2017). As to the first element, "Tennessee

law recognizes two types of fiduciary relationships: relationships that are fiduciary per se

42

(e.g., attorney/client, guardian/ward) and relationships that are 'confidential' due to one

party's ability to exercise 'dominion and control' over another party." Innerimages, Inc. v.

Newman, 579 S.W. 3d 29, 49 (Tenn. Ct. App. 2019).

155.    Plaintiff Lea was party to a contract with Defendant First Bank and the Federal

Defendants guaranteed the contract with the Defendant First Bank. In addition, Plaintiff Lea

was third-party beneficiary of the first and second contract and both contracts created

fiduciary relationship with Defendant Rollins.

156.    On or near October 18, 2022, the contract was paid in full through section 22006 of the

Inflation Reduction Act. On the same day, a second contract was paid in full by the Federal

Defendants pursuant section 22006 of the Inflation Reduction Act.

157.    On or near February 25, 2024, the Plaintiff received a letter from the Federal Defendants

alerting him that his total compensation for section 22006 of the Inflation Reduction Act was

a little over $386, 000.

158.    Based upon the previous letters sent to the Plaintiff the total amount paid by section

22006 was approximately $228,000.

159.    Defendant Rollins did breach her fiduciary duty by failing to send the surplus funds to the

Plaintiff as she did for White farmers receiving the same benefits under section 22006.

160.    Defendant Rollins exercised control of the surplus money and used the surplus money to

benefit the defendants and create unjust enrichment to the federal defendants or the private

bank. The Plaintiff will need to conduct discoveries to make the determination who ended up

with the surplus funds owed to the Plaintiff under section 22006 of the Inflation Reduction

Act.

161.    It was later learned that Defendant Rollins breached her duty by sending more money to

Defendant First Bank on or around July 31, 2023 made payable to the Defendant First Bank

and the Plaintiff

43

162.     In order to recover for breach of fiduciary duty under Tennessee law, a plaintiff must

establish: (1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury

to the plaintiff or benefit to the defendant as a result of the breach.4 In re Estate of Potter,

2017 WL 4546788, at * 2 (Tenn. Ct. App. Oct. 11, 2017). As to the first element, "Tennessee

law recognizes two types of fiduciary relationships: relationships that are fiduciary per se

(e.g., attorney/client, guardian/ward) and relationships that are 'confidential' due to one

party's ability to exercise 'dominion and control' over another party." Innerimages, Inc. v.

Newman, 579 S.W. 3d 29, 49 (Tenn. Ct. App. 2019).

163.     Defendant First Bank breached its duty by failing to stop its counsel from submitting a

loss claim to secure pandemic assistance from section 22006 of the Inflation Reduction Act.

In fact, Defendant First Bank knew that it was not entitled to any more funds from the

unlawful foreclosure.

164.     Plaintiff is entitled to relief.


## COUNT THIRTEEN

## CONVERSION

165.     Plaintiff Restates and Realleges 1-164.

166.     Tennessee courts define "conversion" as the appropriation of tangible property to a

party's own use in exclusion or defiance of the owner's rights. PNC Multifamily Capital

Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp., 387 S.W.3d 525, 553

(Tenn. Ct. App. 2012). In order to plead a prima facie claim of conversion, a plaintiff must

show: (1) the appropriation of another's property to one's own use and benefit, (2) by the

intentional exercise of dominion over it, (3) in defiance of the true owner's rights. Id.

167.     Money is generally considered intangible property and not subject to a claim for

conversion. Id. "However, there is an exception where the money is specific and capable of

identification or where there is a determinate sum that the defendant was entrusted to apply to

a certain purpose." Id. Conversion may be established for these identifiable funds "where a party shows ownership or the right to possess specific, identifiable money." Id. For example, "tax receipts or insurance premiums, where there is an obligation to keep the money intact or to deliver it," may be the subject of a conversion claim. Id. Also, "where the defendant is under an obligation to deliver specific money to the plaintiff and fails or refuses to do so, or when wrongful possession of it has been obtained by the defendant," there is conversion. Id

168.     In accordance to the rules posted on https://extension.usu.edu/ruraltax/tax-topics/IRA24 , these are the guidelines on how section 22006 of the Inflation Reduction Act was administered:

In August 2023, USDA announced additional automatic assistance for guaranteed borrowers.

Distressed **Guaranteed Farm Loan Borrowers** who qualified for late 2023 round of 22006 assistance received letters from USDA FSA explaining these new payments which are, per the letter, to be issued by a US Treasury check. This letter explains to the recipients that they are not required to provide any additional information to USDA. **The check was issued in the name of the borrower and the guaranteed lender.** The letter provides the dollar amount of debt relief.

There are three potential options which qualify distressed borrowers under this round of payments. It is noted that if a guaranteed loan qualified previously for any 22006 assistance, that loan is not eligible for the three options.

- Option 1: Guaranteed loan was delinquent as of October 18, 2022. The IRA payment will be issued in the amount that will bring the account current as of October 18, 2022. If the account was accelerated on or before October 18, 2022, the IRA payment may include protective advances, liquidation expenses, late fees, and any other expense owed by borrowers according to their promissory note. The funds are required to be applied to the guaranteed loan, first to any delinquency.

- Option 2: Guaranteed loan received a loan restructure between March 1, 2020, and August 11, 2023. The guaranteed loan must not have been paid in full prior to August 11, 2023. The payment amount will be the lesser of the post-restructure annual installment or the amount required to pay the loan in full. The final maturity date of the loan must have been adjusted during the restructure. This option does not include interest rate changes or payment extensions where the final maturity date did not change. The borrower and their lender must have executed a new note or an allonge to support the loan restructure. The funds are required to be applied to the guaranteed loan, first to any delinquency.

45

- Option 3: Guaranteed loan received a deferral or another type of payment extension in response to COVID-19, disasters, or other revenue shortfalls between March 1, 2020, and September 30, 2022. The guaranteed loan must not have been paid in full prior to August 11, 2023. The IRA payment will be issued in the amount that was deferred or extended for at least 45 days, up to $100,000. The IRA payment amount will be the lesser of the most recent deferral or extension amount on the loan, or the amount required to pay the loan in full. The funds must first be applied to cure any delinquency, then to the deferral or extension. Any remaining funds must be applied to the guaranteed loan.

169.    The Plaintiff is in receipt of a 1099c IRS tax form in which at least $13,000 was sent to First Bank (formerly Farmers National Bank) between October 18, 2022 and October of 2024 in the name of the Plaintiff and the guaranteed lender. The 1099 IRS tax form stated that the event took place on July 31, 2023.

CONTINUING VIOLATIONS DOCTRINE

170.    "Under the continuing-violation doctrine, the court can consider as timely all relevant violations 'including those that would otherwise be time[-]barred.'" Nat'l Parks Conservation Ass'n, Inc. v. Tennessee Valley Auth., 480 F.3d 410, 416 (6th Cir. 2007) (quoting Sharpe v. Cureton, 319 F.3d 259, 267 (6th Cir. 2003)). With reluctance, the Sixth Circuit has applied the continuing-violation doctrine beyond Title VII cases to other claims of deprivation of civil rights. Id. at 416-17 (quoting LRL Properties v. Portage Metro Hous. Auth., 55 F.3d 1097, 1105 n.3 (6th Cir. 1995) and collecting cases). The doctrine solely applies to claims arising from longstanding, demonstrable policies; it does not apply to claims involving discrete violations that fall outside the statutory time period. Sharpe, 319 F.3d at 268. To fall within the doctrine, the defendant must continue his wrongful conduct after the first instance, the plaintiff's injury must continue to accrue after the first violation, and additional injury to the plaintiff must have been avoidable had the defendant ceased his wrongful

46

conduct. Eidson, 510 F.3d at 635 (quoting Tolbert v. State of Ohio Dep't of Transp., 172 F.3d 934, 940 (6th Cir. 1999) and citing Paschal v. Flagstar Bank, 295 F.3d 565, 572 (6th Cir. 2002)).

171.    Defendant First Bank is liable for all injuries through the continuing violations doctrine.

172.    Defendant First Bank breached the contract by not returning the overages of the foreclosure sale from May 29, 2014.

173.    The Federal Defendants did conspire with Defendant First Bank to breach the rules and regulations to injure the Plaintiff starting in 2009. The Federal Defendants knew Defendant First Bank did not obtain permission, per agency rules and regulations, before getting a foreclosure judgment.

174.    The Federal Defendants and Defendant First Bank continued to violate state and federal law by conspiring to defraud the Plaintiff of overages to pay of the second mortgage in August of 2014.

175.    The Federal Defendants then in turn created a debt against the Plaintiff so that he could not apply for any new federal programs. The cause and effect was that the Plaintiff was not eligible for any pandemic assistance for farming operations and Covid relief as enjoyed by similarly situated White farmers.

176.    Purposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in the forum state or conduct which can be properly regarded as a prime generating cause of the effects resulting in the forum state, something more than a passive availment of the forum state's opportunities.

47

Bridgeport Music, Inc. v. Still N the Water Publishing, 327 F.3d 472, 478 (6th Cir. 2003)

177.    The Plaintiff is entitled to relief.

## COUNT FOURTEEN

## TORTIROUS INTERFERENCE OF CONTRACT

178.    Plaintiff Restates and Realleges 1-177.

179.    *Kolstad v. Leehar Distribs., LLC*, NO. 3:18-cv-00060, 11 (M.D. Tenn. Dec. 28, 2018) ("(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means . . . and finally, (5) damages resulting from the tortious interference.*Trau-Med of America*, *Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (internal citation omitted).").

180.    Defendant First Bank in fact knew of the business relationship with the Plaintiff and the Federal Defendants.

181.    Defendant First Bank had full knowledge of the Plaintiff's business Relationship with the Federal Defendants.

182.    Defendant First Bank intent to cause the breach so that it could continue to receive money belonging to the Plaintiff through various USDA programs in the future.

48

183.    Defendant First Bank and its agent convince a few federal employees to improperly funnel money to the private bank and its counsel and create improper debt for the Plaintiff.

184.    Defendant First Bank caused the Federal Defendants to deny farm loans in Tennessee and within the jurisdiction of this Court on two separate occasions.

## COUNT FIFTEEN

### 5 U.S.C. 706, 7 CFR 2.25(a)(i) and Equal Protection and Due Process under the Fifth Amendment

185.    Plaintiff Restates and Realleges 1-184.

186.    The Federal Defendants have devised a scheme to not resolve administrative complaints by Black farmers, such as Plaintiff.

187.    The Federal Defendants have not appointed an Assistant Secretary of Civil Rights since 2016. The ASCR is the only person who can give a final agency decision to Socially Disadvantaged Farmers, such as the Plaintiff.

188.    The Federal Defendants' refusal to docket complaints filed by the Plaintiff is a violation of the APA and the Fifth Amendment.

189.    However, in June of 2024, the United States Supreme Court held in *Loper Bright Enters. v. Raimondo, Sec'y of Commerce*, 144 S. Ct. 2244, 2273 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. ")

190.    The Plaintiff asserts that the Agency rules that sends Socially Disadvantaged Farmers automatically, specifically Black farmers, to the Office for Civil Rights is just "store front of continued discrimination." In other words, the Fifth Amendment is

49

controlling as the USDA does not have the same procedures for White farmers as it does for Black famers.

191.    For example, White famers take their claims to the Office for Administrative Law Judges, and if not satisfied with the outcome, the decisions is available for judicial review.

192.    On the other hand, Black farmers are not afforded the same one day mini trial in which they get discovery, call witnesses at trial, and face the wrongdoer. Black farmers wait for a final agency decision from the ASCR and it's not subject to judicial review. See *Johnson v. Dep't of Agric.*, 833 F.3d 948, 955 (8th Cir. 2016) ("An adjudicator then makes a determination as to whether there was discrimination based on the information in the ROI and issues a Final Agency Decision that must be approved by the Chief of the Adjudication Unit. See id.§§ 3.IV.2–5. The complainants may be represented by counsel. See id.§ 3.I.6j. But as conceded by counsel for the USDA and the individual plaintiffs at oral argument, there is no procedure for questioning evidence submitted by the opposing party, much less an evidentiary hearing—a fact confirmed by the absence of provisions for such procedures in the USDA's manual specifying procedures for Part 15d investigations. See generally USDA Departmental Manual 4330–001, supra. In addition, there appears to be no avenue for seeking judicial review of OASCR's final decisions. No statute provides for judicial review of decisions under Part 15d, and we believe the Administrative Procedure Act does not do so either. ")

193.    Through the Continued Violations Doctrine, the Plaintiff has suffered and continues to suffer injuries through the inactions of the Federal Defendants.

194.    The Plaintiff is entitled to relief.

## PRAYER OF RELIEF

A.  A Declaration by this Court making it unlawful and or constitutional for
    Agency Rules and Regulations 7 CFR.101(d)(2)(3),7 CFR 764.101(f);

B.  A Declaration by this Court making it unlawful and or constitutional  for
    the Agency rule 7 CFR 764.152(f) are unlawful for Socially Disadvantaged
    Farmers; with pending discrimination complaints prior to January 1, 2021 to
    be resolved by section 22007 of the Inflation Reduction Act;

C.  A Declaration by this Court making it unlawful and or constitutional for the
    Defendant to automatically apply section 22006 of the Inflation Reduction
    Act to program loans of Socially Disadvantaged Farmers with previous
    unresolved accepted discrimination complaints or SDFs who  attempted to
    file complaints that were not docketed by the Office for Civil Rights  or the
    Administrative Law Judge;

D.  A Declaration by this Court making it unlawful and or constitutional   for
    the Federal Defendants' deny enforcement of guaranteed loan contracts with
    private banks and simultaneously deny complainants the opportunity  to be
    heard for the unlawful actions of the private bank, the Defendants or
    both;  subsequently sending affected loan into delinquency;

E.  Declaration by this Court making it unlawful and or constitutional for the
    Defendants to have separate administrative processes for Black farmers and

51

White farmers that do not have the same rules and regulations or provide the same protections for adverse actions in program loans or program enforcements;

F.   A Declaration by this Court making it unlawful and or constitutional for the Federal Defendants or in furtherance of a conspiracy thereof, to deprive Socially Disadvantaged Farmers and Ranchers the right to enjoy Property interest that includes, buy, sell, lease or to hold through agency rulemaking or in violation of 42 U.S.C. 1981, 82 and 85 to give 1099 or 1099G IRS without resolving pending program complaints for full relief;

G.   A Declaration by this Court making it unlawful and or constitutional for the Federal Defendants to apply pandemic loan servicing based on race, class, sex, or gender which includes the method of payment distribution in furtherance of a conspiracy to deny future federal assistance;

H.   A Declaration by this Court making it unlawful and or constitutional the Federal Defendants to unreasonably delay monetary pandemic relief to Socially Disadvantaged Farmers and Ranchers more than 4 years when similarly situated White farmers received monetary pandemic relief as fast as 6 days under the CARES ACT and Coronavirus Food Assistance Program;

I.   A Declaration by this Court making it unlawful and or constitutional for the Federal Defendants not to publish guidelines for appeals rights after a decision and payment is made under section 22007 of the Inflation Reduction Act;

52

J.   A Declaration by this Court making it unlawful and or constitutional for a third party to administer a Congressional Act, section 22007 of the Inflation Reduction Act;

K.   A Declaration by this Court making it unlawful and or constitutional for the Federal Defendants to continue to use of the County Committee System to administer Congressional Acts;

L.   A Declaration by this Court making it unlawful and or constitutional for the Federal Defendants to create a barrier or impair the property interest of property held by Socially Disadvantaged that is subject to administrative offsets, judgments, or liens on program loans in which the Defendants failed to resolve disputes of alleged debts or provide a final agency decision and subsequent judicial review;

M.   Declaration by this Court making it unlawful and or constitutional Federal Defendants not to provide rules and regulations that provide for judicial review of decisions from the Assistant Secretary for Civil Rights or the Office of Civil Rights.

N.   A Declaration by this Court making it unlawful and or constitutional for Defendants Windsor Group, LLC, the Midtown Group, or Analytic Acquisitions to consult, request, be advised by or share collected information with Defendants Vilsack or the Department of Agriculture or its agents, in order to make a determination for pandemic relief;

O.   A declaratory judgment holding it unlawful for Congress to provide discretion to Defendant Vilsack to settle claims or offer pandemic

53

relief for Socially Disadvantaged farmers and ranchers under section 1006 of the American Rescue Plan Act of 2021;

P.        A declaratory judgment holding it unlawful for Defendant Vilsack to continue to pay funds from the American Rescue Plan 2021 Act or the Inflation Reduction Act of 2022 to "trusted" community-based groups without groups applying for the funds or allowing other groups to apply for the funds;

O. A declaratory judgment holding it unlawful for the county committee system to receive any monies earmarked for Socially Disadvantaged farmers and ranchers that went unused in the prior fiscal year;

Q. A declaratory judgment holding it unlawful for the county committee system to make any determination on credit worthiness of Socially Disadvantaged farmer and rancher;

The Sum Certain of $45,000,000
R. Punitive Damages;
S. Compensatory Damages;
T. Treble Damages;
U. Nominal Damages;
V. Liquid Damages;
W. Incidental Damages;
X. Consequential Damages;
Y. General Damages;
Z. Special Damages

Respectfully Submitted,

Corey Lea
P.O Box 422
Arlington, Tennessee
615 308 7787
cowtownfoundation@gmail.com

54

VERFICATION

 I, Corey Lea, under the penalty of perjury, attest that all the aforementioned statements, to the

best of my knowledge, are true. For the reasons stated, the Court should Grant the relief

requested.

Notary Public

Signature Seal

2-19-25

Date

CERTIFICATE OF SERVICE

        I hereby certify that on February 20, 2025, a true and exact copy of the forgoing pleading
was filled in person with the Clerk's office and served upon the  parties as indicated below
through certified the United States Mail:

Henry Leventis
Office of the United States Attorney
110 9th Avenue South, #A961
Nashville, TN 37203

Counsel for Defendant Thomas Vilsack,
Secretary of the United States Department of Agriculture

I hereby certify that on February 20, 2025, a true and exact copy of the foregoing pleading was filed in person with the Clerk's office and served via email Henry.Leventis@usdoj.gov.to U.S. Mail on Registered Agent for Defendants as listed below:

The Department of Agriculture
1400 Independence Avenue SW
Washington, DC 20250

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Windsor Group, LLC,
6710A Rockledge Dr Ste. 400
Bethesda, Maryland 20817

The Midtown Group,
1130 Connecticut Ave NW
#450  Washington, DC 20036.

Analytic Acquisitions,
8300 Hartford Ave.
Silver Spring, Maryland 20910-5308.

First Bank AKA FB Financial Corporation
722 Columbia Avenue
Franklin, Tenn. 37064

CT Corporation System
300 MONTVUE RD
KNOXVILLE TN, 37919-5546

2-19-25